[No. 19565. Department One. March 12, 1926.]

THE STATE OF WASHINGTON, *Respondent,* v. ARDEN LLOYD *et al., Appellants.*[1]

[1] CRIMINAL LAW (429)—APPEAL—REVIEW—PROCEEDINGS NOT IN RECORD. Reversible error cannot be predicated upon prejudicial remarks of the court made to a portion of the panel upon swearing them in at the beginning of the term, where it is not shown that any of the jurors drawn in the case on trial were present at the time and heard the remarks.

[2] SAME (202)—JURY (58)—TRIAL—PRESENCE OF ACCUSED — EXAMINATION OF JUROR. Defendants in a criminal case are entitled to be present and examine jurors on their *voir dire,* under the common law and Rem. Comp. Stat., § 336, providing for a trial of challenges; and to substitute an *ex parte* examination by the court when defendants were not present is the denial of a substantial right.

[3] CRIMINAL LAW (276)—INSTRUCTIONS—ALIBI. It is prejudicial error to instruct that an alibi is easily fabricated and proved and should be received with great caution and subjected to rigid scrutiny.

[4] WITNESSES (98-1)—IMPEACHMENT OF ONE'S OWN WITNESS. It is prejudicial error to permit the state to contradict or impeach its own witness by evidence that the witness had made statements to the prosecuting attorney and to the jury on a previous trial at variance with her testimony and which she denied having made.

[5] CRIMINAL LAW (124)—EVIDENCE—ARTICLES TAKEN FROM ACCUSED. Where a revolver, taken from the accused, was finally rejected by the court as not connected with the offense charged, it should not be offered or received in evidence at the trial to follow.

[1] Reported in 244 Pac. 130.

Appeal from a judgment of the superior court for Pierce county, Teats, J., entered July 13, 1925, upon a trial and conviction of murder in the first degree. Reversed.

*Lloyd & Croteau* and *Vance & Christensen*, for appellants.

*J. W. Selden* and *Thomas F. Ray*, for respondent.

HOLCOMB, J.—At 9:30 on the morning of February 7, 1925, one Harry Schmidt, an assistant cashier of the National Bank of Tacoma, accompanied by a bank messenger named West, went by street car to a branch of that bank operated on 38th Street South, in the city of Tacoma, for the purpose of delivering currency and specie necessary for the day's business, amounting to approximately $4,000, about $3,000 of which was in silver, and all of which consisted of considerable bulk. They alighted from the street car, and, just as they were about to enter the bank door from the outside, Harry Schmidt was ruthlessly shot in the back, from which shot, he shortly thereafter died. At the time he was shot another man appeared with a pistol in his hand, giving the order "put up your hands." The murder was committed by the two men for the purpose of robbing the bank officials, and, as appears from the mere statement, was a most atrocious and unjustifiable homicide. Following the shooting, a satchel and bags of specie carried by the messenger and assistant cashier were seized by the two killers, who jumped into a waiting automobile and for a time escaped. The car was never found thereafter. As the murder occurred on a well traversed street and in broad daylight, a number of people had an opportunity to observe it, and some of the witnesses thereof were upon the street car that carried the murdered man and the messenger

to the scene of the killing. A few days after the homicide, these appellants were arrested and charged with the crime of murder in the first degree. The shooting seems to have been done with a revolver, and the gun held by the other man who held up the messenger was also a revolver. The bullet that caused the death wound was a revolver bullet, and not that of an automatic pistol.

Appellants were first tried in April, 1925, which trial resulted in a mistrial. In June following, they were again placed upon trial. When the general venire which was to try the cases for the June and July term reported in the criminal department of the superior court, the presiding judge addressed the entire venire, with the exception, appellants assert, of one panel of the trial jurors then hearing a case in another department, and "lectured" them upon their duties as jurors in criminal cases. The "lecture" which is set out in full in the record is strenuously attacked as a comment upon the evidence, in violation of § 16, art. IV of the state constitution.

At the beginning of the trial, when the jury was being obtained, the trial judge refused to allow veniremen upon their *voir dire* to be sworn for examination, and, after considerable controversy between the trial judge and attorneys for appellants, the court made an order to be entered upon the journal of the court, as follows:

"Be It Remembered: That at a session of the superior court of the state of Washington in and for the county of Pierce, Department No. Three, held at the court house in the city of Tacoma, in said county and state, on the 8th day of June, A. D. 1925, present the Honorable Govnor Teats, presiding judge of said Department, and J. F. Libby, clerk, the following proceedings were had and done, to wit:

"In re Petit Jurors, at 10:00 o'clock a. m.

"The entire jury panel for the month of June being present in court, and having answered to their names, at the order of the court, are sworn by the clerk to true answers make to such questions as may be asked, by or under direction of the court, as to their qualifications to serve as trial jurors in each and all cases in which they may be called during the ensuing term."

During the examination of the jurors, the trial judge refused to allow jurors called into the box to be sworn as to their general qualifications as jurors, or examined upon their *voir dire* therefor. Neither of appellants nor their respective counsel was present in court at the time the trial judge had sworn all the ninety-nine jurors, then serving at that term of court in each and all of the cases to be called, as recited in the foregoing order.

A special defense interposed by each of appellants was that of an alibi. Upon that subject, the trial court gave the following instruction:

"You are instructed that you should consider the evidence in support of an alibi with great caution; and that all the evidence upon that subject should receive rigid scrutiny. For in determining the credibility of the evidence of an alibi witnesses may be honestly mistaken in, or forgetful of, times and places; and from the other fact that an alibi, like any other defense, may be easily fabricated."

During the production of evidence the state called one Mrs. Hoskins as one of its witnesses. She was asked certain questions by the prosecution, the answers to which were not satisfactory. She was then asked whether she had not made certain statements, specifying them in detail, in the presence of the jury, to Mr. Ray, the assistant prosecuting attorney who was examining the witness, and also in the presence of Mr. Peterson, a detective of the police department of Ta-

coma; and, upon her denying that she had made such statements to them, Mr. Ray, the deputy prosecuting attorney, and Mr. Peterson, the detective, were permitted to take the stand and testify that the witness produced by the state had made the statements presented to her in the questions of the deputy prosecuting attorney, at the place and time mentioned.

At the time of the arrest of appellant Kinney in Seattle, Washington, a .45 calibre automatic pistol, army model, was found under his pillow in his room in the hotel, three days after the robbery. It was offered in evidence in the trial of this case, although its identity or resemblance to either of the weapons used in the robbery and murder was not proven by the prosecution, and in fact was denied by its witnesses. Although it was afterwards rejected by the trial court, it remained in the presence of the jury for a considerable period of time, and testimony as to its being found at the time of the arrest of appellant Kinney was put before the jury.

Other matters and things complained of occurring during the trial are detailed at considerable length in the briefs of appellants, and verified by the record. These other matters are none of them to our minds sufficiently prejudicial to justify a reversal of the judgment of conviction in this case, although some of them are subject to criticism.

[1] First, considering the general remarks to the venire, set forth on motion for a new trial, vehemently assailed by appellants, consisting of a lengthy dissertation as to the duties and functions of juries in criminal cases, much of it discussing matters for which courts are frequently criticized, we are obliged to say that, so far as the record in this case is concerned, there is no affirmative showing that any juror who sat in the trial

of this case heard the previous general remarks of the trial judge. Appellants themselves assert that, of the 99 veniremen in attendance upon the trial court at that time, twelve jurors were absent trying another case, and there is nothing in the record here to show that a number of other jurors were not trying other cases in other departments of the lower court; for we must note judicially that there are four departments of the superior court in Pierce county, of which one or more other than that of the presiding judge in this case may have been then trying jury cases. At any rate, no juror was asked in the examination of veniremen in this case whether he or she had heard the remarks, or "the lecture" as it is denominated by appellants, at the beginning of the jury session. Since they are not shown to have been heard by the jurors who tried this case, or any of them, and were not made during the actual trial of the case, we cannot hold, for this cause alone, that they constituted reversible error.

[2] A much more serious complaint arises upon the refusal of the trial court to allow the jurors to be sworn to answer as to their general qualifications upon the *voir dire,* because the trial court itself had sworn all the jurors and examined them as to their general qualifications at the beginning of that month's jury session.

Respondent insists that there is no need to notice the argument upon that proposition, because no oath is required by statute in this jurisdiction until the jury is finally chosen. That is true. It is also true that the trial court may, in the exercise of its sound discretion, properly limit the extent of the examination upon any of the particulars of qualifications of jurors. *Voir dire* examination was a well-recognized and settled practice at common law. Literally, it means "to speak

the truth." It refers to an oath administered to a prospective witness or juror, and also to the examination itself to ascertain whether he possesses the required qualifications, he being sworn to make true answers to the questions about to be asked him concerning the matter. 40 Cyc. 217; 3 Bouvier's Law Dictionary, 3407-8. Since the common law, unless otherwise provided by statute, is in force and effect in this state, it is immaterial that the statute is silent on the question of oaths to prospective jurors on *voir dire* examinations thereunder. It is thus stated in 16 R. C. L. 246, 247:

"Most of the authorities . . . declare that the defendant in a criminal prosecution is entitled to make reasonable and pertinent inquiries of a juror on his *voir dire,* so that he may exercise intelligently and wisely his right of peremptory challenge. And so the examination of a juror on his *voir dire* has a twofold purpose, namely, to ascertain whether a cause for challenge exists, and to ascertain whether it is wise and expedient to exercise the right of peremptory challenge given to parties by the law. It is often important that a party should know the relation sustained by a person called as a juor to his adversary, in order that he may interpose a challenge for cause, or exercise his peremptory right to challenge. . . . And the opportunities for observing the conduct and bearing and manner of the juror throughout the whole examination, as well that by the state as that on his own behalf, are of great value to the accused. Opportunities are thus afforded for inquiry and comparison and inspection of the jurors personally as they thus undergo the examination as a whole. As sometimes expressed, the right is placed on the ground of the tenderness which the law extends *in favorem vitae* to those who are charged with capital offenses, . . ."

Our statute, § 336, Rem. Comp. Stat., provides for the trial of a challenge to a juror under the rules of evidence applying to testimony offered upon the trial

of an ordinary issue of fact. There are other statutory provisions requiring the witness, before testifying, to take an oath or affirmation. But, in any event, it seems clear that the examination of veniremen as to their general qualifications to serve as jurors is as much the trial of a particular case as their examination as to their special qualifications to try the case; and, if their examination is an essential part of the trial, as it certainly is, defendants in criminal cases are entitled to be present thereat and to engage therein.

"A trial begins when the jury are called into the box to be examined as to their qualifications, and ends when the jury have returned their verdict, . . ." *Henry v. State,* 10 Okl. Cr. 369, 136 Pac. 982, 52 L. R. A. (N. S.) 113.

Defendants on trial are entitled to know that the jurymen were sworn; that they were sworn properly, and are not bound by the journal entry of the trial court that they were sworn and sworn properly.

As said in *State v. Wroth,* 15 Wash. 621, 47 Pac. 106:

"The law does not subject parties litigant to the disadvantage of being required to accept the statement of even the judge as to what occurs between himself and the jury in a place where the judge has no right to be and where litigants cannot be required to attend. It is the lawful right of a party to have his cause tried in open court, with opportunity to be present and heard in respect to everything transacted. It is his right to be present and attended by counsel whenever it is found necessary or desirable for the court to communicate with the jury, and he is not required to depend upon the memory or sense of fairness of the judge as to what occurs between the judge and jury at any time or place, when he has no lawful right to be present."

See, also, *State v. Beaudin,* 76 Wash. 306, 136 Pac. 137.

We conclude, therefore, that a substantial right of appellants was denied them, and which was so prejudicial in effect as to require a reversal.

[3] Another error of the court requiring a reversal is the instruction on the subject of alibi given by the trial judge. There can be discerned no difference either in language or in necessary effect between the instruction in this case and that in *State v. Thompson,* 132 Wash. 124, 231 Pac. 461, where an instruction on alibi complained of was this:

"The law recognizes that the defense of an alibi is one easily fabricated, easy to prove and hard to disprove."

Under the above authority this instruction was prejudicially erroneous.

[4] Another error requiring reversal is that of admitting the evidence to contradict or impeach the state's own witness, Mrs. Hoskins. This contention of appellant is sustained by our decisions in *State v. Simmons,* 52 Wash. 132, 100 Pac. 269; *State v. Catsampas,* 62 Wash. 70, 112 Pac. 1116; *Ferris v. Todd,* 124 Wash. 643, 215 Pac. 54, and the very late case of *State v. Bossio,* 136 Wash. 232, 239 Pac. 553.

The automatic pistol, offered in evidence by the state, was finally rejected by the trial court. It should not be offered or admitted in evidence at another trial. It does not come within the rule applying to objects of evidence taken from the accused at the time of his arrest, which are in some way connected with the crime charged or to be charged. It is not within the rule in *State v. Parsons,* 135 Wash. 353, 237 Pac. 497. There the article in question was closely related to the crime charged, was a part of the stolen property, and was taken from one of the persons accused of the crime who was shortly afterwards arrested and found with the

incriminating evidence upon him. Nor is this case like the case of *State v. Mosley*, 136 Wash. 674, 241 Pac. 294, where a gun was partially identified as one connected with the crime in question, as resembling the revolver with which the crime was committed. There, of course, the evidence was of some weight, the weight of which was for the jury to determine. Here the evidence was irrelevant and of no weight, for witnesses produced by the state testified that the automatic pistol was not the one used by either of appellants, if they were the ones who committed the crime, in perpetrating it.

Although this was a most cruelly atrocious crime, and, if appellants were guilty, they should receive the extreme penalty of the law, rather than leniency, appellants are entitled to a fair and impartial trial under the law of the land. Fair and impartial trial means trial by a fair and impartial jury, and without the reception of improper and prejudicial evidence, or the giving of charges which may prejudice the jury against the accused.

Other matters complained of by appellants in this case may not occur during a retrial.

We are convinced that the matters specifically denounced herein violated the legal rights of appellants and entitle them to a new trial. It is so ordered.

TOLMAN, C. J., FULLERTON, MAIN, and MITCHELL, JJ., concur.