[No. 17555.    Department Two.    May 11, 1923.]

JULIUS FERRIS et al., Appellants, v. JOHN W. TODD et al., Respondents.[1]

WITNESSES (98-1)—CREDIBILITY — IMPEACHING OWN WITNESS — PRIOR STATEMENTS. A party cannot impeach his own witness by showing that he made contradictory statements at other times, where the witness did not give testimony unfavorable to him, but merely failed to testify as favorably as was expected.

APPEAL (406)—REVIEW—DISCRETION—NEW TRIAL. The granting of a new trial for error in receiving erroneous testimony will not be disturbed on appeal, where the matter was largely discretionary with the trial judge, who was in the better position to judge of its prejudicial effect.

Appeal from an order of the superior court for Clarke county, Simpson, J., entered June 26, 1922, granting a new trial, after the verdict of a jury rendered in favor of the plaintiffs, in an action for damages to property by fire. Affirmed.

G. M. Davison and W. G. Drowley, for appellants.

McMaster, Hall & Schaefer, for respondents.

FULLERTON, J.—The appellants, Ferris, brought this action against the respondents, Todd, to recover in damages for the destruction of certain of their farm buildings, certain hay and other personal property, which were burned by fire alleged to have been started by the respondents on their own property and negligently permitted by them to escape to the property of the appellants. The cause was tried by a jury, who returned a verdict in favor of the appellants. On motion, the verdict was set aside and a new trial granted for error in admitting testimony. The appeal is from the order granting the motion.

[1]Reported in 215 Pac. 54.

At the trial the appellants called in their own behalf a witness named Carlson, who, in addition to testifying to other matters respecting the fire, gave the following testimony:

"Q. Did you notice the fire jump the old road? A. I did not. I won't say which side of the road the fire was on when I saw it. I don't know. Q. Did you observe the course of the fire or smoke between the time you first saw it and the time the hay stack caught? A. I never paid a great deal of attention to it. Q. Well, answer the question. Did you notice what course the fire took in that time? A. No; as I spoke before, when I first saw it it was where I showed you on the map, and I went into the canyon and I couldn't see the fire for a while and when I came back it was at the hay stack. I couldn't see it between. Q. Did you notice the fire in the fence at the time? A. Which? Before the buildings burned? Q. Yes. A. No, I did not. Q. Do your remember having a conversation with me out at your place shortly after the fire occurred? A. I think you was down there one night. Q. Did you not at that time tell me you saw the fire jump the road? A. I did not tell you that. Q. Well, Mr. Carlson, shortly after the fire, at your house, and in the presence of your wife and family, didn't you state to me in substance, that you saw the fire jump the road and burn south of it and catch in the fence, and the grass along the fence and burn down the fence, and that the reason you didn't go over was because you supposed someone was there to watch the fire? A. I made part of the statement but part of it you are adding to the statement; about the jumping of the road and the catching in the fence, I didn't say. I didn't make that statement. The rest of it I did."

Later, in the examination of another witness by the appellants, the following question was asked and permitted to be answered over the objection of the respondents:

"Q. Mr. Ferris, did Mr. Carlson at your place on Labor Day, immediately after that fire, when Mr.

Young and Mr. Skinner were there, and Mrs. Ferris, did Mr. Carlson state to you that he saw the fire jump the old road and burn into the fence and run along the fence to the hay, or words to that effect? A. Yes.''

Three other witnesses were permitted to testify in like manner.

The court permitted the impeaching evidence under the rule that a party who has been surprised at the unfavorable testimony of a witness he has called on his own behalf may ask such witness whether he has not made contradictory statements at other times and places, and, if the witness denies it, show by other evidence that he has made such statements. The rule itself is well established. *Burger v. Taxicab Motor Co.,* 66 Wash. 676, 120 Pac. 519; *Blystone v. Walla Walla Valley R. Co.,* 97 Wash. 46, 165 Pac. 1049.

But it is plain from the quotations we have made that this is not the question here presented. The witness did not testify unfavorably to the appellants; he merely failed to testify as favorably as the appellants anticipated he would testify. This did not authorize his impeachment by the appellants. Impeachment is for the purpose of showing that a witness is untrustworthy and unreliable, and the right can be invoked only by a litigant against whom the testimony is injurious. To permit a party to show that, on other occasions, his witness has made statements more favorable to him than he made when a witness on the stand, would be to permit him to fill in the gaps in his proof by testimony that has not the sanction of any witness; in other words, it would be to permit a party to prove his case by hearsay testimony.

The authorities are in accord upon the question.

In *Sturgis v. State,* 2 Okl. Cr. 362, 102 Pac. 57, it is said:

"It is not enough that the witness failed to testify favorably to the party calling him, in order that previous contradictory statements made by such witness may be introduced in evidence, but the witness must have testified to facts injurious to the party calling him before he can be so impeached."

This is also the position taken by this court in *Blystone v. Walla Walla Valley R. Co., supra,* wherein we said:

"The rule is that, where a party calling a witness is taken by surprise by reason of *affirmative* testimony *prejudicial* to the interest of the party by whom he was called, prior contradictory statements may be shown for the purpose of affecting the credibility of the witness."

In 40 Cyc. 2696, the rule is laid down in this language:

"The mere fact that a witness has failed to testify as expected does not warrant impeaching him by proof of prior statements in conformity to what he was expected to testify; but proof of prior contradictory statements of a party's own witness is admissible only where the witness has given affirmative testimony hostile or prejudicial to the party by whom he was called; and in such case the proof must be confined to contradictions of the testimony of the witness which is injurious to the party seeking to impeach him."

In 28 R. C. L. 646 it is said:

"The rule [permitting impeachment of one's own witness] has its well defined limitations and it is not every trivial or immaterial circumstance that will justify such a course. The witness must give testimony prejudicial to the party calling him and it is not enough that he disappoints the expectations of such party by failing to give beneficial testimony."

The trial court, therefore, was correct in ruling that the impeaching testimony was improperly admitted.

The appellants contend further that any error com-

mitted in permitting testimony found objectionable was cured by the court's instruction to the effect that it should only be considered as affecting the credibility of the witness. But, as we have seen, it was not competent even for that purpose. Moreover, the trial court was in a much better position than are we to determine what effect the testimony had on the jury. And whether or not it would grant a new trial on that ground was so largely within its discretion that we would not disturb its ruling, even were we inclined to the belief that it was an error capable of cure by instructions.

The court below did not err in granting a new trial, and the order is affirmed.

MAIN, C. J., PARKER, TOLMAN, and PEMBERTON, JJ., concur.