No. 32,604

Oliver Downs, *Appellant*, v. J. S. (Don) Fossey, *Appellee*.

(61 P. 2d 875)

Opinion filed November 7, 1936.

*Max Wyman* and *Erskine Wyman*, both of Hutchinson, for the appellant.

*Walter Huxman, Charles S. Fulton, A. C. Malloy, Roy C. Davis, Warren H. White* and *William H. Vernon*, all of Hutchinson, for the appellee.

The opinion of the court was delivered by

Harvey, J.: This was an action for damages for personal injuries sustained in an automobile casualty alleged to have resulted from the negligence of defendant. A jury trial resulted in a verdict for plaintiff for $3,000. Defendant filed a motion for a new trial on several grounds, one of them being misconduct of the jury. The trial court sustained the motion upon the one ground only, namely, the misconduct of the jury, stating at the time of the ruling that

the other grounds of the motion urged by defendant were without merit.

Plaintiff has appealed, and contends that the evidence respecting the misconduct of the jury did not justify the granting of a new trial for that reason, and it is further contended that since the evidence was all in writing, in the form of affidavits, this court can examine and weigh that evidence as well as the trial court could do, and this court should examine this evidence and hold that the trial court erred in granting a new trial.

The casualty occurred on U. S. highway No. 50 south, at a place about eighteen miles west of Hutchinson. There the highway is paved eighteen feet wide with brick. On each side of the brick pavement there is a dirt shoulder about eight feet wide, and directly beyond that is a drainage ditch from two to three feet deep. At the Krenzin farm home, on the south side of the pavement, there is a driveway leading to the pavement, with a culvert sixteen feet wide across the drainage ditch. Near this driveway on the west and a few feet south of the west end of the culvert is an elm shade tree. About twenty-three feet south of the pavement and extending west from the driveway is a row of maple trees, and west of the trees is a row of bushes. East of the driveway, and about the same distance south of the pavement, is a hedge fence, and 188 feet east of the driveway is a hedge tree in the fence. On the north side of the highway is a driveway into the Birkey farm home, with a culvert sixteen feet wide over the drainage ditch north of the pavement. The west end of this culvert is sixty-three feet east of the east end of the culvert across the drainage ditch on the driveway from the Krenzin farm south of the highway.

Plaintiff and his wife were riding east along this pavement in an automobile. The wife was driving at a speed of nearly fifty miles per hour on the south side of the highway. As they were approaching the driveway from the Krenzin farm defendant drove his car out of that driveway and turned east. We omit any statement of the evidence bearing on the question of whether in doing so he exercised due care, for that question is not before us for review. The record does show a conflict in the evidence as to how far he drove onto the pavement. His testimony is that he turned east before getting on the pavement proper and that only the two left wheels of his car were on the pavement at any time before the casualty. There is other evidence tending to show that he drove far enough onto the

pavement so that the front of his car was near the center of the pavement. At any rate, plaintiff's wife, driving the car in which he was riding, saw defendant's car coming onto the pavement, and turned to the left until her car was traveling on the north side of the pavement, and it passed defendant's car without colliding with it. Her testimony is that in driving to the north side of the pavement to avoid a collision with defendant's car her left front wheel went off the pavement proper onto the shoulder (and on that point there is a conflict of testimony); that she saw the culvert across the ditch on the north side of the pavement in the driveway leading to the Birkey farm, thought it possible she might run into it with disastrous results, and turned the car to the right onto the pavement and across it in a southeasterly direction and into and across the ditch on the south side of the pavement and against the tree in the hedge 188 feet east of the Krenzin driveway. The collision with this tree caused the injuries for which this action was brought.

The jury deliberated the afternoon of April 22 and for a time on the morning of April 23 without reaching a verdict, when one of the jurors stated to the court that if the jury could be taken to the scene of the casualty perhaps it would aid the jury in reaching a verdict. It appears both parties agreed the court might send the jury to view the premises. The court did so, addressing the jury as follows:

"The court will now instruct you as to your duties in going to view the premises in question. You will be sent there by order of the court. It is your duty not to talk to each other anything about what you see while you are there, or while you are going to or coming from the premises. Do not talk to each other about it until you get into your jury room. It is your duty not to allow anybody else to talk to you about what is done there or to make any suggestion to you about it, except that the officer who will go with you will point out to you where the place is. You are simply to look at it and say nothing, and the officer is simply to point it out to you and say nothing more. Mr. Bailiff, you will understand that you are instructed that you are simply to take this jury to the place in question in this suit and that you are to say nothing whatever to them except to take them to the place and show them where it is, without any comments; and when they have viewed the premises, that you will return them into court. They are not to be separated. When you have viewed the premises, gentlemen, you will return with the officer to the jury box. You will take charge of the jury, Mr. Bailiff, and conduct them to this place, and then return with them into court."

The jury returned into court about noon and resumed its deliberations and returned the verdict about 4:30 p. m. of the same day.

From affidavits presented by defendant in support of its motion for a new trial it appears that the jurors went to the scene of the casualty in three automobiles. When they reached the place the bailiff, Mead, drove into the Krenzin driveway and turned around with his car facing the pavement. The juror, Barnett, with two other jurors in his car, drove west from the Krenzin driveway, perhaps a quarter of a mile, turned around and drove back, approaching the driveway at a speed of about forty miles per hour, and as he neared it turned or swerved to the north side of the driveway and came to a stop a short distance east of the Birkey driveway. Some of the affidavits were to the effect that this was done as a test, reënacting the movement of plaintiff's car as it approached and passed the Krenzin driveway. The affidavits also disclosed that one or more of the jurors had the bailiff, Mead, drive his car out of the Krenzin driveway and turn to the east in the manner defendant testified he drove from the driveway and turned. The affidavits also disclosed that some of the jurors, perhaps several of them, took measurements with a tape line, and one or more of them stepped off distances. The affidavits also disclosed that the tests made and the measurements taken were discussed and considered by the jurors after they resumed deliberations and before the verdict was returned. The court's decision and ruling on the motion for a new trial is as follows:

"The evidence submitted to the court in the form of affidavits certainly discloses that the jurors did things at the scene of the accident not contemplated by the court when he permitted them to view the scene, and contrary to the instruction given them immediately prior to their departure. Measurements were made, an experiment conducted, perhaps two, and all in all their conduct amounted to more than a simple view of the place where the collision occurred as is contemplated by the statute. Whether prejudice resulted, I cannot say, but seems to me this doubt should be resolved in favor of the losing party, and I am therefore granting a new trial solely on the ground of misconduct of the jury . . ."

Turning now to the questions argued. It is true this court can read and interpret the affidavits presented on the hearing of the motion for a new trial as well as the trial court could do, but the possible influence upon the verdict of the facts disclosed by the affidavits could be determined much better by the trial court, since only a little of the evidence offered at the trial is contained in the abstract, and we have had no opportunity of observing jurors and witnesses throughout the trial. We need not discuss this point

further, for, by our interpretation of the affidavits, they justified the court in granting a new trial. It is clear the jury did not follow the instructions of the court given when they were sent to view the premises. They made tests and measurements and discussed these later in their deliberations. In automobile casualty cases evidence of tests made before the trial is sometimes admissible (*Pool v. Day*, 143 Kan. 226, 231; 53 P. 2d 912), but when such evidence is offered upon the trial of the case differences in conditions existing when the tests were made and when the casualty occurred, differences in the cars used and in the drivers, and perhaps in other respects, may be brought to the attention of the jury, and pertinent instructions relating thereto may be given by the court. The general rule is, "The members of the jury are not at liberty to try experiments for themselves out of court." (22 C. J. 755.)

Appellant argues there is no positive finding of the court, and no showing from the affidavits, that defendant was prejudiced by such misconduct as was shown to have taken place. Obviously, a showing of the effect upon their verdict of the jury's misconduct would be difficult to make, since jurors are not permitted to testify as to what induced them to reach the verdict. (*Ohlson v. Power Co.*, 105 Kan. 252, 182 Pac. 393.) There are cases in which it is clear the misconduct shown had no bearing on the questions at issue, and could not have influenced the verdict. (*Emporia v. Juengling*, 78 Kan. 595, 96 Pac. 850; *Rudy v. Headley*, 103 Kan. 417, 173 Pac. 913.) That cannot be said here. The way defendant drove out of the driveway, the portion of the pavement his car covered in doing so, the distance the respective cars were apart when the drivers could have seen each other, how soon defendant's car could have been seen by plaintiff, or by the driver of the car in which he was riding, how that car could have been handled under those circumstances, were all involved in negligence of defendant and contributory negligence of plaintiff, which were material issues affecting the liability of defendant. These were the very things the affidavits show were the subject of tests and measurements made by the jury. The jury had been out several hours before being sent to view the premises. Obviously they were not in agreement upon these points. After making tests and measurements which had a direct bearing on vital issues in the case they considered the case further and returned a verdict for plaintiff. The conclusion seems irresistible that these matters influenced the jury in reaching a verdict. The

fact that a verdict was against defendant indicates those matters were considered to his detriment. It was not essential that the court make a positive finding that defendant was prejudiced by the misconduct of the jury. The following authorities support these views: *Ortman v. U. P. Rly. Co.*, 32 Kan. 419, 422, 4 Pac. 858; *Barver v. Emery*, 101 Kan. 314, 319, 167 Pac. 1044; *Spinner v. McDermott*, 190 Minn. 390, 251 N. W. 908; *DePorte v. State Furniture Co.*, 129 Neb. 282, 261 N. W. 419; *Losey v. Creamer*, 45 Ohio App. 356, 187 N. E. 197; *Schneider v. Moe*, 151 Ore. 353, 50 P. 2d 577; *City of Longview v. Rea* (Tex. Civ. App.), 76 S. W. 2d 886; *St. Louis Southwestern Ry. Co. v. Mauney* (Tex. Civ. App.), 93 S. W. 2d 377.

The judgment of the court below is affirmed.