[No. 34915. Department Two. February 11, 1960.]

E. J. COWAN, *Appellant,* v. CHICAGO, MILWAUKEE, ST. PAUL & PACIFIC RAILROAD *et al., Respondents.*[1]

[1]Reported in 349 P. (2d) 218.

*John B. Speer, Bogle, Bogle & Gates, Orlo B. Kellogg,* and *George N. Prince,* for appellant.

*Richard L. Gemson* and *Guttormsen, Scholfield, Willits & Ager,* for respondents.

HILL, J.—From a judgment of dismissal, following a jury verdict for the defendant in a personal-injury action, the plaintiff appeals. The assignments of error raise issues

concerning the admissibility of certain evidence and whether requested instructions should have been given.

The plaintiff, a locomotive engineer, is claimed to be totally and permanently disabled in consequence of a heart condition. It is the plaintiff's contention that for a three-week period, while sleeping in a boarding house maintained by the defendant railroad, gas emanating from chloropicrin (placed in the attic of the building as a bat repellent by the defendant fumigating company) penetrated into his room; and, in consequence thereof, he suffered headaches, cramps, chest pains, and nausea; and (to quote his medical expert) "the toxic effect of the chloropicrin [gas] had been producing difficulty with his lungs; that it had increased the burden on his heart," which, in turn, was the cause of his present condition.

The railroad and the fumigating company concede that the chloropicrin was placed in the attic, but urge that the gas therefrom could not have penetrated into the plaintiff's room in sufficient amounts to have occasioned permanent injury, and that his present heart condition resulted from arteriosclerosis and atherosclerosis which had been developing over a long period of time.

After a trial, which lasted seven days, the jury brought in a verdict for the defendants; and, from the judgment of dismissal entered thereon, the plaintiff appeals.

With the instructions given by the trial court, the plaintiff has no complaint; but he urges, as error, the failure to give two requested instructions: (a) as to the liability of the railroad, which owned the building and operated it through a subsidiary, for the negligence of an independent contractor in creating a dangerous condition in the building; and (b) King county uniform instruction No. 50.

As to (a), if the jury had found the fumigating company to be negligent and failed to bring in a verdict against the railroad company, there would be an issue as to whether there had been a proper instruction on vicarious liability. We cannot see how, under the facts in this case (the jury having found no liability on the part of the fumigating

company), there could be any prejudice in the failure to give the requested instruction.

In any event, an instruction that was given placed a greater responsibility on the railroad company than the requested instruction, for it made the railroad liable, if a reasonably prudent person in the same position would have evacuated the boarding house until the bat repellent operations were over. This was, doubtless, based on *Blancher v. Bank of California* (1955), 47 Wn. (2d) 1, 286 P. (2d) 92, where we held that it was not error to refuse instructions concerning independent-contractor-and-owner relationship because the owner's duty to keep the premises reasonably safe for a business invitee is nondelegable.

As to (b), it seems to us that King county uniform instruction No. 50 had no applicability under the facts.

That instruction says that if the plaintiff has a bodily condition which made him more subject to injury than a person in normal health, the defendant railroad is legally responsible for any and all injuries suffered by the plaintiff as a result of the defendants' negligence, even though those injuries, due to said condition, may have been greater than those suffered by a normal person under the same circumstances.

There was no evidence to which the jury could have applied such an instruction. It was not the plaintiff's theory, and there was no testimony that the gas emanating from the chloropicrin would have placed an increased burden on the plaintiff's heart, if the pre-existing arteriosclerosis or atherosclerosis, concerning which the defendants' witnesses testified, was present, or that his injuries (his present heart condition) were greater than those suffered by a normal person under the same circumstances.

Nor is there anything in the record, making clear to the trial court or to this court, what instruction the plaintiff actually desired, as required by Rule of Pleading, Practice and Procedure 10 (RCW Vol. 0), which states that exceptions to instructions "shall be sufficiently specific to apprise the judge of the points of law or questions of fact

in dispute." We have frequently held that exceptions to instructions will not be considered on appeal where the exception fails to advise the court of the specific points of law involved (*State v. Hinkley* (1958), 52 Wn. (2d) 415, 325 P. (2d) 889; *Klise v. Seattle* (1958), 52 Wn. (2d) 412, 325 P. (2d) 888; *Cauble v. Dahl* (1956), 48 Wn. (2d) 440, 294 P. (2d) 416), and this is particularly applicable to the failure to give requested instructions.

The plaintiff's exception was as follows:

"The ground of our objection to the failure to give the standard instruction requested on aggravation is that there is evidence here that the plaintiff had an arteriosclerotic condition but not of such degree as to cause him trouble with any probability except for the negligence of the defendants."

While this refers to the "standard instruction requested," the principle of law, to which reference is made in the exception, is quite different from the principle of law referred to in the uniform instruction requested.

To make this clear, we will place our statement of the principles involved in parallel columns.

(a) The requested instruction (King County uniform instruction No. 50):

Where a plaintiff has a bodily condition which makes him more subject to injury than a person in normal health, the defendant is legally responsible for any and all injuries suffered by the plaintiff as a proximate result of the defendant's negligence, even though those injuries, due to said condition, may have been greater than those suffered by a normal person under the same circumstances.

(b) The instruction obviously referred to in the exception:

Where the plaintiff has a dormant or quiescent condition which is aggravated and made active, as a proximate result of the defendant's negligence, the plaintiff is entitled to recover for the disability or pain proximately due to such aggravation, but is not entitled to recover for any physical ailment or disability which may have existed prior to the defendant's negligent act.

It is apparent that not only do these instructions apply to different situations, but the extent of a defendant's liability is markedly different.

■ The assignment of error indicates that the plaintiff wanted instruction (a); the exception quoted indicated that he regarded the principle of law stated in instruction (b) as applicable to the case, and desired that instruction. It is apparent that the exception did not adequately apprise the trial court of the principle of law which the plaintiff regarded as applicable to the case.

We turn now to four assignments of error relating to the striking, rejection, and reception of evidence.

1. Ross Kusian, a graduate mechanical engineer, had worked approximately thirteen years in heating and ventilation. He was director of the environmental research laboratory at the University of Washington. His work was that of an industrial hygienist, concerned with the recognition of toxic materials in the atmosphere, and part of his studies included the reactions of people exposed to toxic materials. He testified that, in his opinion, there were from one to three parts of chloropicrin gas per million in the air in the room occupied by the plaintiff in the railroad's boarding house.

This opinion was in answer to a hypothetical question, largely based on various physiological symptoms and complaints of different occupants of the boarding house, including the plaintiff, during the three weeks he occupied a room there.

The witness admitted, under cross-examination, that the effects of chloropicrin gas on a human being would be a "medical question," and that he had no personal knowledge of the effects of chloropicrin gas on humans.

The witness was clearly basing his opinion—that the plaintiff had been exposed to a concentration of chloropicrin gas in "the range from one to two or three parts per million" —on the effect on various individuals, which ranged from a burning sensation, coughing, loss of breath, stomach sickness, vomiting, dizziness, weakness, chest pains, and eyes watering and smarting.

The trial court granted a motion to strike the testimony because the basis of the conclusion of the witness was medical, *i.e.,* the reactions or symptoms of various individuals described in the hypothetical question. This the plaintiff claims was error.

■■ The determination of whether a witness has the proper qualifications to testify on a certain subject is within the trial court's discretion. *Wilson v. Wright* (1958), 52 Wn. (2d) 805, 329 P. (2d) 461. The party producing the witness must show he is qualified. *Tully v. Mahoning Express Co.* (1954), 161 Ohio St. 457, 119 N. E. (2d) 831, 45 A. L. R. (2d) 1144.

■ Assuming that it would not have been error to permit Kusian's testimony to remain in the record, there was certainly no abuse of discretion in striking it. The determination as to his qualifications rested with the trial court. Even if erroneous, it was not prejudicial, because the basic facts of the plaintiff's case were established by other testimony without the opinion of Kusian as to the concentration of the gas. There was testimony that the chloropicrin gas could get into the plaintiff's room, if released in the attic; that this gas did get into his room, and a doctor testified that it caused the heart condition from which he suffered.

2. John Pate, an industrial hygienist, testified as to tests made by him with two bottles of chloropicrin to determine the rate of evaporation of the gas under controlled conditions. This, he testified, would be an average on which humidity, air currents, and the like would have only a minimal effect. The trial court instructed the jury to disregard the testimony, when it developed that Pate did not know the conditions in the attic of the boarding house and he conceded that it would be impossible to recreate those conditions as to drafts, air currents, heat and the like.

■ Determining whether a test is made under substantially similar conditions to those with which the trial court is concerned, is a matter within its discretion; and we will not reverse unless we are satisfied that there has been an abuse of discretion (*Barnes v. Labor Hall Ass'n* (1957), 51 Wn. (2d) 421, 319 P. (2d) 554; *State v. McMurray* (1955),

47 Wn. (2d) 128, 286 P. (2d) 684), and the abuse of discretion has been prejudicial to the appellant.

Here we see no abuse of the trial court's discretion in determining that conditions in the laboratory at the university and in the attic of the boarding house were not the same, and in instructing the jury to disregard the testimony concerning the laboratory tests.

We have said that evidence concerning such tests, as that now under discussion, should be admitted with care—and only when it appears that the conditions under which the test was made and all of the surrounding circumstances are reasonably comparable to those with which the court is concerned,—"the test is supposed to be of assistance to the trier of the facts." *Briggs v. United Fruit & Produce, Inc.* (1941), 11 Wn. (2d) 466, 479, 119 P. (2d) 687.

3. The plaintiff contends that the witness Kusian should have been permitted to testify as to the similarity of the conditions in the experiment by Pate and the conditions in the attic at the boarding house.

We are unable to pass on that issue because the record is not properly before us.

Kusian testified that he supervised Pate's tests, and was familiar with the conditions under which they were made. He testified that he had been in the attic at the boarding house where the chloropicrin was being used. He was asked,

" . . . do you have an opinion as to how the evaporation rate of that bottle in your laboratory would compare with the evaporation rate of a bottle of chloropicrin besides the chimney in the attic of the boarding house?"

An objection, which stated no reason, was sustained. The plaintiff pursued the matter no further. No offer of proof was made as to whether the witness had an opinion or what the opinion would be. To obtain appellate review of trial court action in excluding evidence, there must be an offer of proof. *Sutton v. Mathews* (1952), 41 Wn. (2d) 64, 247 P. (2d) 556. In that case it was said (p. 67),

". . . An offer of proof must be sufficiently definite and comprehensive fairly to advise the trial court whether or not the proposed evidence is admissible. . . . [citing cases] An additional purpose of such an offer of proof is to inform the appellate court whether appellant was prejudiced by the exclusion of the evidence. . . . [citing cases]"

 4. Finally, it is urged that the experiments conducted by the witnesses of the defendants at the boarding house should not have been admitted into evidence because the conditions were not similar.

The witnesses on behalf of the plaintiff had been permitted to testify as to their experiments at the boarding house.

Two witnesses for the defendants had testified, without objections, as to their experiments. (This involved the release of chloropicrin gas in the attic, and testing as to the extent of its penetration into the room occupied by the plaintiff.)

One of those witnesses testified specifically that the window in the plaintiff's room was closed during the experiment to prevent the escape or dilution of any gas entering the room.

When the third witness, who participated in the experiment conducted by the defendants, was testifying, objection was made for the first time that conditions were not similar to those existing at the time the plaintiff occupied the room, inasmuch as he had kept the window open practically all of the time. The trial court ruled that the objection was not timely. We agree.

 Assuming, but not deciding, that the objections made should have been sustained, the evidence as to the experiment complained of was before the jury in the testimony of two other witnesses, and there was no motion to strike their testimony. We see no possible prejudice to the plantiff in the rulings as to which he now complains.

The plaintiff's contentions, as to the cause of his present heart condition, were competently and adequately presented to the jury. In the final analysis, the jury elected

to believe the defendants' medical experts rather than the plaintiff's; and the claimed errors, if any, did not affect the result.

The judgment of dismissal is affirmed.

WEAVER, C. J., FINLEY, ROSELLINI, and FOSTER, JJ., concur.

March 28, 1960. Petition for rehearing denied.