[No. 34959. *En Banc.* November 9, 1960.]

S. G. SAULS et al., *Appellants,* v. CLIFFORD K. SCHEPPLER et al., *Respondents.*[1]

[1]Reported in 356 P. (2d) 714.

*Henry Arnold Peterson* (of *Peterson & Peterson*), for appellants.

*Vernon R. Pearson* (of *Davies, Pearson, Anderson & Pearson*), for respondents.

HILL, J.—The plaintiffs appeal from a judgment of dismissal entered on a verdict for the defendants in an action for personal injuries. The issues presented have to do with the instructions given and refused, and with whether the trial court abused its discretion in permitting the jury to view the premises.

The facts are not in dispute. S. G. Sauls, who will hereafter be designated as the plaintiff (although his wife is also a party), was a friend of the defendants; his hobby was carpentry. He was installing, as an accommodation, a louver in the attic of the defendants' house; and, for that purpose, used a ladder which stood upon a painted cement patio and rested against the house. The ladder slipped, causing the plaintiff to fall and sustain serious injuries. The patio surface was slippery and dangerous; and the defendants did not warn the plaintiff of that fact. His status is conceded to be that of an invitee. The defense was contributory negligence and assumption of risk. The jury obviously agreed with the defendants.

It is urged on appeal that instructions No. 12 and No. 13 (respecting the plaintiff's duty of due care) were

incomplete because they embody a standard of reasonable physical observation while omitting the necessary ingredient of mental appreciation of the danger. Those instructions were as follows:

Instruction No. 12:

"You are instructed that under the law the defendants in this case were under a duty to warn the plaintiff only of those conditions or dangers existing on their premises which were hidden and which were not open, visible and apparent. It would not constitute negligence on the part of the defendants to fail to warn the plaintiff of a dangerous condition if that condition should have been seen by the plaintiff in the exercise of reasonable care."

Instruction No. 13:

"Under the law, one is charged with the duty of observing those objects or conditions which he would have seen had he been exercising reasonable care. Failure so to observe constitutes negligence or contributory negligence as the case may be."

Standing alone, such instructions would have been incomplete and erroneous, but instruction No. 14 told the jury:

"What is an obvious danger, that is, readily apparent to the senses, depends upon all the surrounding facts and circumstances. It is not enough that the physical facts are visible. The Invitee, acting as a reasonably prudent person, must have appreciated the danger to which he was exposed by such condition, if any, and if he does not appreciate the danger therefrom while acting as a reasonably prudent person under the circumstances then prevailing, such danger would not, in fact, be open or apparent to the senses and, to the contrary, would be a hidden or latent danger."

This instruction covers the omission of which the plaintiff complains, and—considering the three instructions together —there is an adequate statement of the applicable law. Instructions cannot be isolated, but must be considered as a whole. *Ranniger v. Bryce* (1957), 51 Wn. (2d) 383, 318 P. (2d) 618; *Robbins v. Greene* (1953), 43 Wn. (2d) 315, 261 P. (2d) 83.

■ The contention that instruction No. 14 is contradictory to instructions No. 12 and No. 13, and that the jury was confused thereby, is untenable. Instruction No. 14 is manifestly complementary to and explanatory of the instructions immediately preceding it.

■ We find no error in the stock instruction, relating to proving negligence and contributory negligence, which is the basis of an assignment of error. Seven assignments of error are based on the refusal to give requested instructions. The substance of these instructions, insofar as they were correct statements of applicable law, was adequately covered by the instructions given by the trial court.

The plaintiff places great emphasis on the claim that it was error to permit the jury to view the premises.

■ It is recognized that permitting the jury to view the premises is discretionary with the trial court. We have so held in a long line of cases beginning with *Klepsch v. Donald* (1892), 4 Wash. 436, 30 Pac. 991, and extending through *Riblet v. Ideal Cement Co.* (1959), 54 Wn. (2d) 779, 345 P. (2d) 173.

The plaintiff urges that there was an abuse of discretion because of changes in condition between the time of the injury and the time of trial—the size of the patio had been greatly increased; a window box had been added; the concrete floor had been painted a different color; and a roller had been used in applying the paint, instead of a brush, which left a somewhat rougher surface. The plaintiff adequately protected his record by insisting at all times that the changed conditions would make a view of the premises misleading.

■ The trial court approached the problem in a most conscientious manner, insisting on viewing the premises in company with counsel before exercising his discretion in the matter as indicated by the following colloquy with the attorneys.

"I have concluded that I would like to go and view the premises myself so that I may intelligently answer the question of whether the jury should have the privilege of viewing the premises, and if it is convenient for counsel,

we can go at this time. MR. ANDERSON: At your convenience, we can go in my car. THE COURT: Is it all right with you to go at this time, Mr. Peterson? MR. PETERSON: Your Honor, my suggestion on the matter of the Court's visitation, if it were a case that were being tried to the Court, I would think that might be highly desirable, but I wonder in a case where it is now being tried to a jury, the evidence is before the jury as to the conditions that there is a difference from what there was then, in the paint at least; not only that, but the patio is extended— THE COURT: I will interrupt you, Mr. Peterson. The only purpose of my going, and I am sure you understand, it is to see whether or not I should exercise my discretion one way or the other, because it is certainly, I think you will agree, is in my discretion and I want to look at it in order to determine that. MR. PETERSON: Should not that discretion, Your Honor, be exercised on the evidence, then? THE COURT: I don't think necessarily so. At least, I will feel better about it if I look at it whatever I do. MR. PETERSON: What I am trying to do also, is to conserve time so that we can get the case disposed of today. THE COURT: I appreciate that, but I want everybody to have their say and views presented, and I will feel better about what I decide by virtue of what I do today."

After the trial court and counsel had together visited the *locus in quo,* the court said:

"The Court has had the privilege of viewing the premises, and I am satisfied that the conditions as they appear today would not and could not, and I wish to emphasize the words 'could not,' be materially different from what its condition would have been on the date of this accident. I am satisfied that the paint has nothing to do with the actual texture or the condition of the concrete underneath, and that while there is a difference in the color of the paint, that the whole situation today could be nothing else but almost identical as far as the surface is concerned with what it was at the time of the accident. I am further satisfied that my observation was such that I have a little bit of a different understanding of the testimony and of the pictures and that, to me, it clarifies exactly what the situation would have been on the date of the accident as far as this concrete patio is concerned, and if it helps me, why, it would help the jury in understanding better the testimony and the exhibits. Now, if by chance there is some matter which would be different as far as the Plaintiffs' case, because of the jury

having a view of it, I believe that the Plaintiff, of course, has the privilege of bringing out in rebuttal those matters. That will be entirely up to the Plaintiff. So, that will be the ruling."

The trial court had clearly in mind that a view of the premises is for the purpose of better understanding the evidence admitted, and not for the purpose of taking new evidence. *Riblet v. Ideal Cement Co., supra; Steadman v. Shackleton* (1958), 52 Wn. (2d) 22, 322 P. (2d) 833; *Portland-Seattle Auto Freight, Inc. v. Jones* (1942), 15 Wn. (2d) 603, 131 P. (2d) 736. He instructed the jury:

"Members of the jury, we are going to take a ride. We are going to go out and view the premises that are under discussion here. I want to advise you that the purpose is to observe, you are not to experiment or anything like that; in other words, you are not to get any additional evidence, but you are only to view the premises to better understand the evidence which has already been or will be presented to you."

In the long line of cases (from 1892 to 1959) to which we have referred, this court has never had occasion to grant a new trial, in a case tried to a jury, because of an abuse of discretion by the trial court in granting or refusing to grant a view of the premises. In *Riblet v. Ideal Cement Co., supra,* where the issue was how much cement dust had been deposited on certain property within a two-year period, it was argued (p. 785),

" . . . that the jury was prejudiced by a view not only of the cement dust which had accreted during the two-year interval in question but by the deposit of dust both before and after that period."

We there said that allowing the view (p. 786)

" . . . may have been inadvisable, but it was not an abuse of discretion, and no prejudice to appellant is shown to have resulted therefrom."

The jury was advised of every change in the condition and appearance of the patio area between the time of the accident and the time of trial, including the difference in color, mode of application, and surface appearance of the paint on the concrete floor of the patio.

We might disagree among ourselves as to whether a view was advisable in the present case, but we are unable to say that there was any abuse of discretion by the trial court. If his view of the premises gave him a different understanding of the testimony and the pictures, he was justified in believing that "it would help the jury in understanding better the testimony and the exhibits."

There is no showing that the explicit instructions of the trial court to the jury, as to the purpose of the view, were in any way disregarded. Although the plaintiff was twice accorded extensions of time in which to secure affidavits in support of his motion for a new trial, none was presented.

The judgment is affirmed.

WEAVER, C. J., MALLERY, DONWORTH, FINLEY, OTT, and HUNTER, JJ., concur.

FOSTER, J. (dissenting)—I cannot agree that the trial court did not abuse its discretion in permitting a view of the premises under the circumstances disclosed by this record. If the condition has materially changed in the interval between the accident and the trial, the jury might be misled and a denial of a view, under the circumstances, is not an abuse of the judicial discretion. *Wieber v. Everett,* 155 Wash. 167, 283 Pac. 1085.

I think there was an abuse of discretion in permitting a view of the premises because of the changes made in the ten-month interval between the accident and the trial, which is emphasized by the reason given by the respondents' counsel in the request for the view. The respondent wife admitted that the ladder standing on the patio at the time of the accident was a "deathtrap." Respondents' counsel desired the view not for the purpose of enabling the jury to understand the testimony but to contradict the deathtrap testimony.

The decisive issue in the controversy was whether the condition of the patio was so dangerous as to intrude itself upon the observation and appreciation of an ordinarily prudent person. Where, as here, a fairly delicate observa-

tion of the physical attributes must be translated into an appreciation of danger, small changes assume increased importance. This may be without significance to gross perceptions, but may assume controlling importance in views involving fine judgments. The inquiry is: Were the changes material to a perception of danger, and, if so, were they sufficiently substantial to make a significant difference in that perception at the two different times? The answer is "Yes."

It is beyond controversy that the patio was enlarged to many times its previous size, that it was painted a different color with a different type of paint applied to produce a rougher appearing surface, and that a flower box had been added so that the ladder perforce leaned against the house at a different angle. At the time of the accident, the patio was enclosed with a wire fence which was removed before trial. The totality of the changes produced a different mental image.[2]

Dean Wigmore stated the applicable criterion in the following passages of his work on evidence:

"The *present condition* of an object offered may not be the same as at the time in issue, nor so nearly the same as to be proper evidence of its former condition; accordingly, autoptic proference is allowable only on the assumption that the condition is now the same or sufficiently similar." 4 Wigmore on Evidence (3rd ed.) 243, 246, § 1154(6).

"It may be noted, as one circumstance affecting the exercise of that discretion, that, since the present condition of an object is not always a good index of its prior condition at the time in issue, a view may well be refused where such a change of condition is likely to have occurred that a view

---

[2]"Sensitivity to stimulus patterning introduces problems of organization going beyond sensitivity to stimulus differences. The basic organization appears to be that of figure-and-ground so that we recognize patterns as figures against a background whether or not the patterns are familiar. *Contours and surfaces are important determiners of how we perceive figures.*

"Mainly, we perceive things, and we perceive environmental objects as thing-like, that is, as stable and enduring. *The stability of perceived objects depends on various constancies: color- and brightness-constancy, shape-constancy, and size-constancy. . . .*" (Part italics supplied). Hilgard, Introduction to Psychology, 281, 309 (1953).

of the object in its present condition would probably be misleading." 4 Wigmore on Evidence (3rd ed.) 277, 279, § 1164.

Such then is a brief statement of my reasons for believing that the trial court erred in permitting the view of the premises because of the manifest changes made in the interval between the accident and the time of trial.

I would order a new trial.

ROSELLINI, J., concurs with FOSTER, J.