[No. 35525.    Department Two.    May 11, 1961.]

ARLIE O. COLE et al., *Appellants*, v. W. H. McGHIE et al., *Respondents*.*

*Reported in 361 P. (2d) 938.

*Culp, Dwyer & Guterson* and *William L. Dwyer*, for appellants.

*Clarke, Clarke, Albertson & Bovingdon*, for respondents.

MALLERY, J.—This is an action for personal injuries sustained by plaintiff Mrs. Cole in a fall in the parking lot appurtenant to the Town & Country Super Food Market in Bothell. The defendants Fleming are the owners and the defendants McGhie are the tenants and operators of the market.

The trial court dismissed the action as to the defendants Fleming, and the jury returned a verdict in favor of the defendants McGhie. The plaintiffs appeal.

The parking lot is on the east side and the rear of the market and has eighteen marked parking stalls for customers' automobiles. Access to the lot is gained by an alley on the south side of the market, from which a left turn is made to the north. There is a rear entrance to the market near the north end of the rear of the building. Just north of this entrance, there is a concrete block wall forty inches high, which runs at right angles to the wall of the market. There are three parking stalls at right angles to this wall and directly opposite the rear entrance. A "bull rail" consisting of a six by six timber is anchored to the surface of the parking lot approximately thirty-nine inches from the concrete wall. This prevents automobile bumpers from striking the wall. The parking lot is lighted at night by three flood lights mounted on the ends and in the middle of the rear wall of the market. One is directly over the rear entrance. The stall nearest the rear entrance, which may properly be designated as the first stall, is about fifteen feet from this entrance.

At about 5:30 p. m., on December 26, 1958, the appellants drove into the parking lot. The flood lights were lighted, and there was an automobile in what we will call the second stall immediately to the right of the first one. They drove into the first stall, and the appellant Mrs. Cole got out of the right-hand front door of their automobile intending to go in front of it and enter the market from the space between the automobile and the concrete wall. Appellants' automobile cast a shadow on the "bull rail" in the space between the automobiles. She tripped on the "bull rail" and struck her shoulder against the concrete wall causing the injuries complained of.

In urging a new trial, the appellants contend the trial court erred in refusing to admit in evidence a signed written statement of the witness White, who was the manager of the market. It was first offered in an attempt to impeach his testimony when he had been called as appellants' witness. The written statement had been taken about fifteen days after the accident. It included the following language:

"I went on the far side of his car (away from the store)

and noticed that his car in that position blocked the light and the bulkhead was very hard to see."

■ This was offered as impeachment of his testimony: "Well, I couldn't say it was easy to see. If we had a word in between hard and easy would be a lot easier off." The trial court excluded the written statement on the ground that it was an improper attempt of appellants to impeach their own witness. The statement was not contradictory. The witness merely failed to testify as favorably as expected. This is not grounds for impeachment. *Ferris v. Todd,* 124 Wash. 643, 215 Pac. 54.

Later in the trial, White was called by the respondents. Upon cross-examination, the appellants, for the purposes of impeachment, read the statement to White and asked him whether or not he had signed it. He admitted that he had. Appellants again tried to enter the statement in evidence and it was again refused.

■ The rule, as to the use of written statements as impeachment, is stated in *Quayle v. Knox,* 175 Wash. 182, 27 P. (2d) 115, wherein we said:

"It is undoubtedly the rule in this state that former statements made by a witness tending to contradict those made by him at the time of the trial are admissible as affecting the weight and value of his testimony. *French v. Seattle Traction Co.,* 26 Wash. 264, 66 Pac. 404; *Sound Timber Co. v. Danaher Lumber Co.,* 112 Wash. 314, 192 Pac. 941; *Sterling v. Radford,* 126 Wash. 372, 218 Pac. 205. But, if the witness admits that he made the contradictory statement, then no further evidence thereof is necessary or admissible. 28 R. C. L. p. 639, § 224; 40 Cyc. p. 2735; 6 Jones on Evidence (2d. Ed.), § 2405. The exhibit was properly excluded."

It was not error to refuse the admission of the written statement as an exhibit since the witness admitted making it and it was read to the jury.

■ On the third day of the trial, the court, upon motion of respondents and over objection of the appellants, directed that the jury be taken to view the scene of the accident. The trial court attempted to recreate the situation and circumstances prevailing at the time of the accident. To this end,

two automobiles were placed in the stalls, which we have referred to as first and second. The flood lights were turned on and, after it was sufficiently dark, the jury was instructed to walk between the two automobiles to observe the illumination prevailing and the effect of the shadows cast by the automobiles on the "bull rail."

The appellants contend that it was not affirmatively shown that the "bull rail" and the lighting were not changed. The record shows otherwise. A clerk at the market testified that conditions of the parking lot were the same at the trial as at the time of the accident, and the trial court picked a time and arranged the circumstances of the jury's view of the scene to conform with the evidence already admitted during the trial. The appellants did not object at the trial upon the ground of changed circumstances and cannot do so now upon appeal.

The appellants contend that the act of the jurors in walking between the parked automobiles was an experiment, or a re-enactment of the accident, which was reversible error because it was not shown that the accident occurred in that exact manner.

Only by walking between the automobiles were the jurors in a position to fully appreciate the conditions which confronted the appellant Mrs. Cole at the time of the accident. A view of the premises from such a vantage point is well calculated to accomplish the approved purpose of explaining the testimony.

It was not error to allow the jurors to view the scene of the accident in order to better understand the testimony in the case.

■ Other evidence which the jury's view was intended to explain is made the subject of another assignment of error. The appellants called two expert witnesses to testify about the illumination at the scene of the accident. After duplicating the conditions at the time of its occurrence, they took meter readings of the intensity of the light at various places in the parking lot, particularly at the "bull rail" between the parked automobiles. The various meter readings were given to the jury in terms of foot candles of light.

The appellants assign as error the refusal of the trial court to permit the experts to testify that the amount of light thus measured at the place in question was inadequate.

Had there been a statute or ordinance prescribing lighting requirements for parking lots in terms of foot candles of light, there would have been a question of expert testimony involved, and expert opinion as to the sufficiency of the compliance with the requirement would have been admissible. No such requirement appears in the record, and no other reason for expert testimony presented itself. The adequacy of the light was the issue to be decided by the jury. It is true that physicists know more about light than laymen, but lighting in the connection here in issue is understood by everyone. It makes no difference what the meter readings were if the lighting was adequate. An issue of negligence requires *opinion* evidence only when the specific fact in question is beyond the understanding of ordinary laymen. It was not error to exclude the opinion evidence of the experts.

The appellants assign as error the failure of the trial court to give a proposed instruction relating to the jury's view of the premises. This request was made orally rather than in writing and was, therefore, properly refused by the trial court. *Heggelund v. Nordby*, 48 Wn. (2d) 259, 292 P. (2d) 1057; Rules of Pleading, Practice and Procedure 51.04W, RCW Vol. 0.

Appellants object to the trial court's instruction No. 1 on the ground that it improperly submitted the defense of *volenti non fit injuria* to the jury in the absence of evidence upon which such a defense would be based. We do not agree that it did so.

Instruction No. 1 was the trial court's statement of the issues presented by the pleadings of the respective parties. For this purpose, the court stated that the respondents claimed Mrs. Cole was contributorily negligent "In voluntarily exposing herself to a known risk." This was an accurate, proper, and harmless statement of the contention. It is not an instruction on *volenti non fit injuria*, and, indeed, the trial court specifically refused to give respondents'

proposed instruction No. 14, which did set out the theory of *volenti non fit injuria* as a defense.

The appellants contend the trial court erred in dismissing respondents Fleming at the close of appellants' case. We do not agree.

■ It was undisputed that the respondents McGhie had been in sole and exclusive possession of the property for a period of one and one-half years prior to the accident and were exclusively responsible for maintaining the premises in a safe manner. The appellants made no showing that the respondents Fleming were negligent in creating a dangerous condition prior to leasing the premises to the respondents McGhie. In the pretrial order, the appellants made no claim that the respondents Fleming were negligent in failing to inspect the premises or in selecting the respondents McGhie as tenants. Since the record would not sustain a judgment against the respondents Fleming, it was not error to dismiss them.

The judgment of the trial court is affirmed.

FINLEY, C. J., OTT, and HUNTER, JJ., concur.

DONWORTH, J., concurs in the result.

[*En Banc.*   January 13, 1962.][*]

HILL, J.—A departmental opinion, affirming a judgment for the defendants in this case, was filed May 11, 1961[1]. A petition for rehearing was subsequently granted, and the case was heard *En Banc* on November 28, 1961. The court is now of the opinion that a new trial should be granted, because of the experiment conducted by the jury under the direction of the trial court.

The facts are adequately stated in the departmental opinion, and we are in accord with the disposition of the various issues as set forth therein, except as hereinafter indicated.

■ We agree with the statement in the departmental

---

[*]Reported in 367 P (2d) 844.
[1]The departmental opinion immediately precedes this one.

opinion that it was not error to allow the jurors to view the scene of the accident in order to better understand the testimony in the case. We have repeatedly held, in a long line of cases from *Klepsch v. Donald* (1892), 4 Wash. 436, 30 Pac. 991, extending through *Sauls v. Scheppler* (1960), 57 Wn. (2d) 273, 356 P. (2d) 714, that a view for such a purpose is discretionary with the trial court.

We have also repeatedly held that the purpose of a view of the premises is not to acquire new evidence. *Sauls v. Scheppler, supra; Riblet v. Ideal Cement Co.* (1959), 54 Wn. (2d) 779, 345 P. (2d) 173; *Portland-Seattle Auto Freight v. Jones* (1942), 15 Wn. (2d) 603, 131 P. (2d) 736. We have approved cautionary instructions, advising the jury of the limited purpose for which the view was permitted. *Sauls v. Scheppler, supra.* In the early case of *State v. Lee Doon* (1893), 7 Wash. 308, 311, 34 Pac. 1103, we said:

" . . . The jury does not view the premises for the purpose of obtaining evidence. No evidence is allowed to be offered there to the jury under any rules or any circumstances; they simply view the premises for the purpose of enabling them to make an intelligent application of the testimony presented at the trial. . . ."

■ That the trial judge had in mind more than a view, for the purpose of enabling the jury to understand the testimony, was clear from the outset, as he said:

"Now, ladies and gentlemen of the jury, we are going out there and view these premises, but it must be after dark because we must reconstruct the light conditions as nearly as possible, so the bus will be here at 4:15, I believe."

The question arose as to whether the plaintiffs' car should be placed in the stall, where it was located on the night of the accident. The plaintiffs' counsel protested that the court was planning an experiment; the court said:

"Well, gentlemen, why shouldn't that car be there? This jury is going to evaluate one thing, and that is the shadow cast by this car in these lights. It is exactly what they are doing. I think we should have that car in that stall. If you don't want to use the car, I will direct that another car be put there. That is exactly what they are evaluating;

that is exactly what the question is, and it is not evidence, it is a view. It is a view for the purpose of assisting them by using their eyes and seeing what their eyes can see in evaluating what the shadow was. That is my view on the subject, gentlemen, and unless Mr. Bovingdon, you do not want—Counsel apparently doesn't want it—if you don't want it I will not direct it over objection of both of you. [Counsel for defendants here concurs in trial court's view that the placing of the car is not error.] . . . I think it is the most direct way to get to exactly the issue in this case. . . . And you [plaintiffs' counsel] may decide between now and the time you get there whether you want to have your client's car put in there or whether you want some other car put in there. I prefer to have that car because it makes it that much more precise."

When the jury arrived at the parking lot area, where the plaintiff wife had been injured, they walked around and generally inspected it and were then sent back to the bus. We now quote counsel for the defendants[2]:

"While the jurors were back in the bus waiting for darkness to descend, the automobile of Mr. and Mrs. Cole was brought around and placed in the first stall, being the same stall that the testimony has shown that they were parked in the night of the accident. Defense counsel's car was then parked in the next adjacent stall.

"The jurors were then, after darkness had fallen, brought back into the parking lot and were requested to view that portion of the timber on the ground and the general area where the plaintiff wife fell and were asked by the Court to walk between the two parked cars in a northerly direction toward the concrete block wall, across the timber, and into the walkway beyond; and each juror, of course, complied with that request. The artificial lighting which was in operation at the time included three electric lamps mounted on the top of the eastern edge of the store building and a street light across the street in a northerly direction from the parking lot.

"In addition there was a light mounted on the north edge of the building near the northeast corner of the building which cast light directly west and directly east. I think

---

[2]When court reconvened the next morning, the quoted statement was made for the purpose of getting into the record what had transpired at the "view."

there was some doubt as to whether that was casting any light on the lot itself.

"All of the foregoing was done over the objection of plaintiff on the following grounds. . . ."

The trial court regarded this as only a view, as did at least four of the judges of Department Two who signed the departmental opinion; a majority of the court now regard it as clearly an experiment and as the reception of evidence independently acquired out of court.

■ We stated the general rule, as to experiments conducted during a jury view, in *Steadman v. Shackelton* (1958), 52 Wn. (2d) 22, 28, 322 P. (2d) 833, where we said:

"The purpose of a view is to enable the jury to better understand the evidence presented at the trial and not to acquire new evidence. See *In re Seattle,* 49 Wn. (2d) 247, 299 P. (2d) 843, and *Booten v. Peterson,* 47 Wn. (2d) 565, 288 P. (2d) 1084. As stated in 150 A. L. R. 958, p. 960, it is generally held that where a test, demonstration, or experiment is conducted during an authorized view, which concerns matters forming a material part of a civil action or criminal prosecution, upon which evidence has been submitted by both parties to the proceeding and which test, demonstration, or experiment in a sense amounts to the reception of evidence independently acquired out of court, tending to influence the verdict, where there is no question of waiver on the part of the complaining party, relief should be granted to the losing party in the form of a new trial or reversal of the judgment. A few of the cases applying this principle are *State v. Baker,* 28 Idaho 727, 156 Pac. 103; *State v. Miller,* 61 Wash. 125, 111 Pac. 1053, Ann. Cas. 1912B, 1053; *Downs v. Fossey,* 144 Kan. 456, 61 P. (2d) 875, and *Baroody v. Anderson,* 195 S. C. 422, 11 S. E. (2d) 860. . . ."

It will be noted that it is not every "test, demonstration, or experiment" which will warrant a new trial. It must "tend to influence the verdict." It is also indicated that there may be a "waiver on the part of the complaining party."

We pointed out in the *Steadman* case, *supra,* that we had refused to grant new trials because of a waiver by the appealing party, where there had been experiments by the jury on a view of the premises: In *Smelser v. Barnes*

(1923), 125 Wash. 126, 215 Pac. 369, because the attorney who was present when the test was made did not raise any objection until the trial was over; and in *Maciejczak v. Bartell* (1936), 187 Wash. 113, 60 P. (2d) 31, because the attorney for the appellant had suggested the experiments and made no objection until after the verdict was returned.

In this case, counsel for appellants did not suggest an experiment, but argued and protested against it both before and after it was made. His clients' car was parked in the stall where it had been parked the night of the accident, but only after counsel had been told by the trial court:

". . . If you don't want to use the car, I will direct that another car be put there. . . ."

There has been no waiver; the question then to be answered is whether this experiment tended to influence the verdict. The Oregon Supreme Court in a quite recent case, *Eckel v. Breeze* (1960), 221 Ore. 572, 579, 352 P. (2d) 460, in considering whether a new trial should be granted because of an experiment of jurors, quoted the following statement[3], which we adopt:

" ' "We cannot determine with certainty, nor is it necessary that we should, that the acts complained of did influence the verdict. It is sufficient cause for reversal if they are likely to do so." ' "

For three days the jury had been hearing about the lady falling over the bull rail; they were, obviously all going to be looking for the bull rail; and what you are looking for, you see. Every juror naturally succeeded in stepping over the bull rail. It was not a fair test to apply to the plaintiffs' case, where—when she alighted from her car—she did not have the bull rail on her mind, and was unaware or unmindful of its presence. The issue was submitted to the jury as to whether the plaintiff exercised the care that would have been exercised by a reasonably prudent person in the same circumstances. It is our feeling that the effect of this experiment could not help but be

---

[3]From *In the Matter of Vanderbilt* (1908), 127 App. Div. 408, 111 N. Y. S. 558, by way of *Schneider v. Moe* (1935), 151 Ore. 353, 50 P. (2d) 577.

prejudicial to the plaintiffs' case and that it was likely to influence the verdict. A new trial should be granted.

What we have said has to do with tests, demonstrations, or experiments during what purports to be a view of the scene of an accident so that the jury may better understand the testimony in the case. It does not imply that trial courts do not have discretion regarding the admissibility of experiments in evidence. We have discussed the rules relating to the admissibility of experiments as evidence in *Sewell v. MacRae* (1958), 52 Wn. (2d) 103, 323 P. (2d) 236. See also *Cowan v. Chicago, Milwaukee, St. Paul & Pac. R.* (1960), 55 Wn. (2d) 615, 349 P. (2d) 218. There was no attempt to qualify what happened in this case as an experiment.

The judgment of dismissal, entered on the verdict of the jury, is set aside and a new trial granted. Costs shall abide the final determination of the case.

FINLEY, C. J., DONWORTH, WEAVER, ROSELLINI, FOSTER, and HUNTER, JJ., concur.

MALLERY, J., did not participate.

OTT, J. (dissenting)—I dissent for the reasons stated in the departmental opinion, *supra,* a unanimous opinion to affirm, filed May 11, 1961.