244

[No. 6696–1.   Division One.   September 17, 1979.]

ROBERT L. ARNOLD, ET AL, *Appellants,* v. ROY
C. LAIRD, ET AL, *Respondents.*

*Schroeter, Goldmark & Bender* and *James D. Hailey,* for
appellants.

*Donald D. Skinner,* for respondents.

DORE, J.—Plaintiffs, the parents of a 4–year–old child,
brought an action for facial injuries as a result of a dog bite
caused by a Great Dane owned by the defendants. The jury
found for the defendants. Plaintiffs appealed. We affirm.

## ISSUES

1. Whether the plaintiffs were entitled to have their case submitted to the jury on both strict liability and general negligence theories.

2. Whether the court committed prejudicial error in permitting the jury to view the dog.

3. Whether the trial court erred in denying plaintiffs' motion for a directed verdict on liability.

## FACTS

In May 1976, the Arnolds and the Lairds lived next door to each other, a fence dividing their properties. The Lairds had two small children, Roy, 8 years of age, and Alema, 7 years old. The Lairds also had a large Great Dane which they kept in a cage–like pen in their backyard. The dog was kept in the pen most of the time but occasionally it would exercise in the fenced yard.

On May 17, 1976, 4–year–old Debrah Arnold was in her yard and began to climb the fence to talk with the Laird children. Without warning the Lairds' Great Dane jumped out of its pen, ran over to the fence, jumped up, and his paw swiped Debrah's face, or the dog bit Debrah's face, causing disfiguring facial injuries.

The plaintiffs claimed the dog had a history of attacking children. The defense in turn introduced evidence negating testimony that the dog had ever attacked anyone. The plaintiffs introduced evidence that the dog's dangerous behavior was festered by its confinement in an environment in which it was teased, underfed, and kept in a small pen. An expert on Great Danes testified for the plaintiffs that underfeeding a dog or confining it in too small a pen was improper and could lead to the dog's becoming nervous and overexcited. It was her opinion that defendants' dog had a dangerous propensity for biting prior to its attack on the Arnold child. She also thought it was dangerous to have children around the dog without adult supervision. She further testified in answer to a hypothetical question that she did not think the dog was vicious. Apparently this

admission led plaintiffs' counsel to stipulate the withdrawal of the issue of the "viciousness of the dog" from the case. During the trial, over the objection of the plaintiffs, the court allowed the jury to view the dog. When the jury observed the dog it was on a choke chain being led by Laird and it was being petted. Plaintiffs claimed this was a prejudicial demonstration, causing error.

It is the plaintiffs' contention that they were entitled to have the jury instructed on two theories (a) strict liability and (b) general negligence.

## Decision

ISSUE 1: Jury properly instructed.

In *Johnston v. Ohls,* 76 Wn.2d 398, 457 P.2d 194 (1969), plaintiff sued for injuries resulting from a motorbike accident allegedly caused by a dog owned by defendants. The testimony in the *Johnston* case was in dispute as to whether the dog was actually attacking the plaintiff, chasing the motorbike, or merely crossing the street. The previous temperament and disposition of the dog was also disputed, as there was evidence that it had previously bitten neighborhood children and had occasionally chased bicycles and motorcycles in front of defendants' home. In *Johnston,* the court stated at page 400:

> Common law liability for injuries caused by vicious or dangerous dogs is based upon a form of strict liability. One who keeps a dog, who knows or reasonably should know that the dog has vicious or dangerous propensities likely to cause the injury complained of, has a duty to kill the animal or confine it. Any injury caused by such an animal subjects the owner to prima facie liability *without proof of negligence.*

(Footnote and citations omitted. Italics ours.)

In *Brewer v. Furtwangler,* 171 Wash. 617, 620, 18 P.2d 837 (1933), the court held that the owner of a dog known to be vicious and accustomed to attack and injure mankind is prima facie liable for injuries sustained without proof of negligence, although the person injured was a technical or unintentional trespasser. It was immaterial that the dog

was chained and the person injured unknowingly entered upon the unenclosed land and within the radius of the dog's chain. The court stated at page 620:

> The terms "negligence" and "contributory negligence" are employed, for convenience and not in a strictly legal sense, in actions of the class in which the case at bar falls. The ground of liability in an action for injuries caused by a vicious dog is not negligence in the ordinary sense; hence, in its ordinary meaning, contributory negligence is not a defense.

The court cited with approval the language in *Clinkenbeard v. Reinert,* 284 Mo. 569, 225 S.W. 667, 13 A.L.R. 485 (Mo. 1920), wherein it was stated:

> "The gist of the action for injury by the dog, after knowledge of its vicious propensity had been acquired by defendant, is not negligence in the manner of keeping the dog, but is for keeping it at all. The duty of the defendant when he acquired knowledge of the ferocious disposition of the dog 'was to hang it,' not to keep it, at the risk of the lives and limbs of children and of adults who might lawfully come upon or pass by his premises at night. [Citing cases] 'Such an animal is a nuisance, and the keeping of it after notice of its ferocious propensity is so wrongful that the owner is chargeable for any neglect to keep it with such care that it cannot do any damage to any person who, without essential fault, is injured by it.'"

We said in *Lander v. Shannon,* 148 Wash. 93, 268 Pac. 145, that, while not strictly applicable to the issues in that case, an instruction was correct, as a general proposition of law, which charged the jury

> ". . . that if one knowingly keeps a vicious and dangerous animal, which is accustomed to attack and injure mankind, he is *prima facie liable for injuries done by it without proof of negligence as to the manner of keeping it, the negligence on which the liability is founded is keeping such an animal with knowledge of its propensities.*"

*Brewer v. Furtwangler, supra* at 620–21.

Paragraph II of plaintiffs' complaint, under the caption of "LIABILITY," reads as follows:

> On or about the 17th day of May, 1976, the dog owned by the defendants attacked said Debrah Arnold. Such

animal was known to have vicious propensities and the dog bite attack and resultant injuries were caused by the *negligence* of the defendants.

(Italics ours.)

Paragraph III, captioned "DAMAGES," reads as follows:

As a result of the aforesaid *negligent* [*sic*] of the defendants, said Debrah Arnold suffered severe lacerations of the face and head requiring medical treatment and surgical procedures causing damages to the plaintiff parents and the plaintiff child . . .

(Italics ours.)

■ Plaintiffs brought this action on the theory of negligence, not on strict liability *and* negligence, as contended in their brief. Plaintiffs had originally contended that the dog had "vicious" and "dangerous propensities." However, at the conclusion of their case plaintiffs stipulated that the dog was *not vicious* and that *viciousness* was no part of their case. The court then instructed (instructions Nos. 5 and 6) that if the jury found the dog to be dangerous and the owner–defendants knew or should have known that the dog was dangerous and that if they found that the dog caused injuries to the plaintiffs' daughter, then they were to find for the plaintiff whether the defendants were negligent or not. The factual information as to the defendants–owners' misconduct, by requiring the dog to be confined in a cooped–up doghouse, underfeeding and the defendants' children tormenting the dog, were all factual matters for the jury to consider in determining whether or not the dog was "dangerous." The trial court correctly instructed the jury that whether the defendants–owners were negligent or not was immaterial. The court's instruction on strict liability of the defendants was far more favorable than the plaintiffs' requested instruction on negligence.

Plaintiffs' proposed supplemental jury instruction No. 1 reads:

The plaintiff claims (a) that the defendants are liable for owning a dog with known dangerous propensities *and/or* (b) that the defendants were negligent in the

manner in which they maintained and/or controlled their dog . . .

(Italics ours.)

The plaintiffs by this instruction asked the court to instruct the jury on the basis that the strict liability and negligence of the defendants merged into a single cause of action *or* that the court should instruct *either* on strict liability *or* on defendants' negligence in the manner in which they maintained and/or controlled their dog.

We hold that it was totally immaterial in the subject case whether the defendants were negligent in their maintaining and controlling their dog. The sole issue was whether the dog had dangerous propensities which caused plaintiffs' daughter's injuries and whether defendants knew or should have known of such propensities.

We conclude that the jury was properly instructed and that the plaintiffs were not entitled to an additional instruction on the theory of negligence.

Issue 2: Jury view of dog was proper.

Plaintiffs argue the trial court abused its discretion in allowing a jury view of the defendants' dog since such jury view was not representative of the dog's condition at the time of the alleged attack on plaintiffs' child.

■ A trial court exercises its discretion when granting or denying a request for a jury view. *Sauls v. Scheppler,* 57 Wn.2d 273, 356 P.2d 714, 85 A.L.R.2d 506 (1960). The purpose of a jury view is to better understand the evidence produced in court, not to take new evidence. *Sauls v. Scheppler, supra.*

Defendants testified that at the time of the jury view, their dog looked similar to how it looked 2 years prior at the time of the alleged attack. The jury was allowed to view defendants' dog but only after the following instruction by the trial court:

Ladies and gentlemen of the jury, Mr. Schwab has requested that we go down and see this dog, Blanket, they have been talking about. Now, while we are down

there, we are not holding court like we are here. We won't have a reporter taking all this down as we do here in the courtroom. So, when we go down there, please just use your eyes. Just look to see what is there. Look at the dog. That is the purpose of going down, to look at the dog.

Please don't try to talk to anybody. Don't ask any questions, and if somebody says something to you, please don't answer. I will try to prevent anything like that, so we don't want any kind of talking down there and the attorneys will not be permitted to ask questions there, either.

We are going down there for the sole purpose of seeing this particular dog, Blanket. The bailiff now will take us down there and back.

The record indicates that the jury looked at the dog on the courthouse lawn, from a short distance away, in accordance with the court's instructions. The view of the dog was not a demonstration.

We conclude the trial judge did not abuse his discretion by allowing a jury view of the defendants' dog.

ISSUE 3: Motion for directed verdict properly denied.

■ The court did not err in denying plaintiffs' motion for a directed verdict on liability. An examination of the record convinces us that whether the animal was dangerous or not was a question of disputed fact. The testimony that the dog had attacked other children previously was disputed by the defense and explained away to some extent. We cannot say as a matter of law that no reasonable man would disagree as to whether or not the dog involved in the subject case was dangerous at the time of the plaintiffs' daughter's injury. The issues of "dangerousness of the dog" and "scienter of the defendants" were properly left to the determination of the jury as issues of fact.

We find plaintiffs' other assignments of error to be without merit.

Affirm.

JAMES and WILLIAMS, JJ., concur.

Reconsideration denied October 25, 1979.

Review granted by Supreme Court February 22, 1980.