[No. 18018.   Department Two.   September 11, 1923.]

W. C. STERLING *et al.*, *doing business as* STERLING & ADAMSON, *Respondents*, v. COLIN RADFORD, *Appellant*.[1]

WITNESSES (122)—IMPEACHMENT—INCONSISTENT STATEMENT. Upon a close disputed question, where a witness makes a statement which appears to be the opposite of the answer expected, it is error to exclude proof that the witness had so stated about the same time when she had full recent knowledge of the facts.

Appeal from a judgment of the superior court for King county, Gilliam, J., entered November 29, 1922, upon findings in favor of the plaintiffs, in an action on contract, tried to the court.   Reversed.

*Carkeek, McDonald, Harris & Coryell,* for appellant.

*Chester & Pixley,* for respondents.

TOLMAN, J.—Respondents, as plaintiffs, brought this action to recover a brokers' commission for procuring a tenant for an apartment house building.   From a judgment as prayed for, the defendant has appealed.

It is admitted that the prospective tenant was first interviewed, and shown the plans of the building to be erected and leased, by another broker, and the case turns upon the question of whether or not these prior negotiations were broken off before respondents intervened and interested the same person, who finally executed the lease.   The testimony which was received is conflicting upon this point, but after a careful consideration, we cannot say that it preponderates against the trial court's findings.

This leaves for consideration as the only other material point raised, the question of whether or not the court erred by rejecting evidence that should have been

[1]Reported in 218 Pac. 205.

received.   For a proper understanding of this question, some portions of the facts must be stated.

One Nellie Brownlow, who afterwards became the lessee, appears to have been in the market for such a lease, and this fact was apparently known to both brokers interested in the transaction.   She was first approached by the broker Molluer, who showed her the plans and told her the terms, both of which appeared to have been satisfactory to her.   She was informed by Molluer that, if she leased, she would have to pay him a commission, and she testified that she refused absolutely to proceed on such terms, and that the negotiations were then completely broken off. Molluer as positively denies that the negotiations were broken off, or even interrupted, though he admits the matter of the payment of the commission was in dispute.

Within a few days after the time when, according to Mrs. Brownlow's testimony, the negotiations through Molluer ceased, respondent Sterling approached Mrs. Brownlow with the same proposition, except that he informed her that his commission would be paid by the lessor, and she would be called upon to pay nothing on that account.   She thereupon indicated her desire to enter into the lease, and she, with Sterling, went to appellant's office to consummate the transaction.   They were sent by appellant to John Davis Company, the general agent in charge of the whole matter, and John Davis Company refused to recognize Mrs. Brownlow, then or at any subsequent time, as respondent's client, because Molluer had theretofore reported that he had interviewed her, and that she was interested and probably would take the lease.

Thereafter, by abandoning any claim to a commission from her, Molluer succeeded in having Mrs.

Brownlow execute the lease.      Respondents tendered
their further services throughout the transaction, and
at its close demanded a commission.      That demand
being refused, they brought this action.      On the trial
below, Mrs. Brownlow, having testified as hereinbefore
indicated, on cross-examination further testified, with-
out objection, that, when the lease was executed, she
informed appellant, the general agent, and all those
then present, that she thought respondents were en-
titled to the commission, informing them that because
Molluer had demanded a commission from her, the
negotiations with him had terminated before respond-
ents undertook to interest her.      This testimony ap-
pears to have been the opposite of the answer counsel
expected to his preceding question, and he thereupon
asked:

"Don't you remember saying at the time in the
presence of these parties that Mr. Molluer was en-
titled to the commission because he was the party who
first put the deal up to you?"

An objection was sustained to this question, and of-
fers to prove that the witness had so stated were after-
wards made, and, upon objection, refused.

The controlling question of whether the negotiations
through Molluer had been terminated was an exceed-
ingly close one asserted by one witness and denied by
the other.      As affecting the value of Mrs. Brownlow's
assertion, a statement made by her at about the same
time, when she had full and recent knowledge of all
the facts, and under the circumstances here shown,
which, unless further explained, would indicate that
the negotiations through Molluer were never broken
off, and terminated only with the execution of the lease,
would seem to have some weight, and we think evi-
dence thereof should have been received and consid-

ered, not for the purpose of eliciting the opinion of the witness as to who had earned the commission, as her opinion on that subject is immaterial, but as tending to discredit her statement that the negotiations through Molluer had terminated. The two statements (if there were two) are in their final effect inconsistent.

"As a general principle, it is to be understood that this inconsistency is to be determined, not by individual words or phrases alone, but by the *whole impression or effect* of what has been said or done. On a comparison of the two utterances, are they in effect inconsistent? Do the two expressions appear to have been produced by inconsistent beliefs? . . .

"The inconsistency may be found expressed, not in words, but in *conduct* indicating a different belief." 2 Wigmore on Evidence, p. 1208, § 1040.

The rejected offers indicate a possibility of statements showing an inconsistency as so defined. We think this principle has been recognized by this court in *French v. Seattle Traction Co.,* 26 Wash. 264, 66 Pac. 404; *Sound Timber Co. v. Danaher Lumber Co.,* 112 Wash. 314, 192 Pac. 941; and *State v. Fluhart,* 123 Wash. 175, 212 Pac. 245.

Because of the errors indicated, a new trial must be granted.

Reversed and remanded with instructions to grant a new trial.

MAIN, C. J., FULLERTON, PEMBERTON, and PARKER, JJ., concur.