IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | No. 34980-2-III |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| GARY LEE BROWN, JR., | ) | UNPUBLISHED OPINION |
| A/K/A GARY LEE TAYLOR, | ) | |
| | ) | |
| Appellant. | ) | |

KORSMO, J. — Gary Brown[1] raises numerous challenges to his conviction for first

degree arson, including claims that the trial court erred in admitting a "*Smith* affidavit"

prepared by a witness and by assisting the prosecutor in entering that evidence. Although

the trial court's actions raise appearance of fairness concerns, we conclude that the court

did not abuse its discretion in admitting the affidavit and affirm.

## FACTS

This case arises from an arson fire that destroyed a mobile home, which was one

of several structures, including another mobile home and a camper trailer, on the same

multiple-acre parcel in Humptulips. The destroyed home was rented by J.J. Haskey and

---

[1] Mr. Brown was known as "Gary Taylor" to some of the witnesses and
occasionally was referred to by that name in trial testimony.

Sally Emery. The other mobile home was the residence of Jose Orellana-Arita and Brandi Haley, while the camper trailer was the home of Michael Anderson.

The arson fire occurred on April 22, 2014; neither occupant was home at the time. Neighbors observed a green van belonging to Edna Ferry at the scene shortly before the fire broke out. Ms. Ferry told officers that she and her boyfriend, defendant Gary Brown, had been on the property to visit Orellana-Arita and Haley, but the pair had not left the van.

Sometime after the fire, Anthony Snodgrass gave Mr. Brown a ride in his car. Brown told Snodgrass that he had set the fire, at the request of Orellana-Arita, in exchange for a truck. Snodgrass subsequently spoke with Detective Darrin Wallace of the Grays Harbor County Sheriff's Office. Wallace wrote the statement out for Snodgrass on a two page form entitled "Victim/Witness Statement" that included a certification form stating the statement was true and correct under penalty of perjury under the laws of the State of Washington. Both pages were signed and dated by both Mr. Snodgrass and Detective Wallace.

The case against Mr. Brown eventually proceeded to jury trial. Mr. Orellana-Arita had been convicted of multiple charges, including solicitation to commit arson, and did not testify at Mr. Brown's trial. Fire investigators testified for the State, and so did several of the residents of the area. A fire investigator testified that the fire was not caused by electrical wiring, but that the burn pattern on the floor "screams" that an

2

ignitable liquid had been used. Report of Proceedings (RP) at 268. Mr. Anderson testified that Brown had approached his camper and took Anderson's gas can and filled a milk jug and a motor oil jug with gas. He also took one of Anderson's towels, ripped it in half, and walked off towards the Emery/Haskey residence. Anderson also told jurors about ongoing tension between Emery/Haskey on one side and Orellana-Arita/Haley on the other.

Ms. Ferry, no longer in a relationship with Mr. Brown, told jurors about conversations Brown had with Orellana-Arita and Haley. She said that Brown reported "everybody" wanted Emery and Haskey out of their home. She had dropped Brown off on the property on the day of the fire and picked him up on the road a half mile away about 15 minutes later. She did not speak to him about what he was doing on the property.

An emotional Sally Emery, glaring at the defendant when she took the stand, also testified for the State. When asked what happened to her home, Ms. Emery replied "Gary burned it." The trial court initially allowed the answer to stand, but later in the day struck the answer and told jurors to disregard it. In response to a question on cross-examination, Ms. Emery told jurors that Diane Norris "said she was going to burn my stuff, her and Brandi Haley coaxed Gary Taylor into doing it." RP at 173. The court sustained a defense objection and struck the statement.

3

The State called Snodgrass as its penultimate witness. He claimed a lack of memory concerning events and hinted that heart surgery and subsequent treatment had damaged his memory. Review of his written statement failed to refresh his memory and the prosecutor spent a significant amount of time questioning Snodgrass to elicit testimony of substance. The trial court interrupted the examination, excused the jury, and the following colloquy occurred:

> THE COURT: Mr. Walker, you are flopping around like a fish on a riverbank.
> MR. WALKER: Yes, Your Honor.
> THE COURT: You have passed up refreshing his recollection about 15 minutes ago. I granted you permission to treat him as a hostile witness. Take the statement from him, and read it to him, and ask him if that's what he told Detective Wallace. Do something besides continuing to just run in circles here, and have him be evasive. We are not getting anywhere. There is a way for you to impeach him with that statement, and I want you to do so.
> MR. WALKER: Very well, Your Honor.
> THE COURT: All right. Have the jury brought back in.

RP at 318. Defense counsel made no comment. The State then attempted to impeach by confronting Mr. Snodgrass with the contents of his statement in the form of leading questions. Mr. Snodgrass replied either "yeah" or "I guess" in response to the remainder of the State's leading questions. He stated that he recognized the form and his signature on it, but did not know if it contained any inaccuracies. On cross-examination he stated that he did not recall reading the statement after the detective wrote it out on his behalf.

4

Detective Wallace was the final witness for the State. He told jurors that Snodgrass had read the statement to ensure its accuracy before signing it. The prosecutor asked the court to excuse the jury and, after that had occurred, moved to admit the affidavit as substantive evidence under *State v. Smith*.[2] The defense objected, but the court overruled the objection and admitted the statement. Ex. 54. Before going to the jury, the affidavit was redacted to remove a statement unrelated to the arson charge. Ex. 57.

The jury found Mr. Brown guilty of first degree arson. On the basis of his high offender score, the trial court declared an exceptional sentence and ordered the arson sentence to run consecutively to the sentences in two other superior court files. Mr. Brown timely appealed. A panel of this court considered the matter without argument.

## ANALYSIS

Mr. Brown raises several arguments concerning the proceedings at trial. We begin with his challenge to the admission of the Snodgrass affidavit and the trial judge's rulings relating to Snodgrass's memory failure. We then turn to the challenges to the testimony of Ms. Emery, whether trial counsel rendered ineffective assistance during the testimony of Snodgrass and Emery, whether the court erred in permitting some of Ms. Ferry's testimony, and whether a firefighter improperly expressed an opinion.[3]

---

[2] 97 Wn.2d 856, 651 P.2d 207 (1982).
[3] In light of our conclusion that there were not multiple errors, we do not address Mr. Brown's claim of cumulative error.

5

No. 34980-2-III
*State v. Brown*

*Admission of the Snodgrass Statement*

The primary issue here is whether it was error to admit Mr. Snodgrass's witness

statement into evidence both to impeach him and as substantive evidence. Since the trial

court had tenable reasons for admitting the document, there was no abuse of discretion.

Trial judges have great discretion in the admission of evidence; thus, decisions to

admit or exclude evidence will be overturned only for manifest abuse of discretion. *State*

*v. Luvene*, 127 Wn.2d 690, 706-707, 903 P.2d 960 (1995); *State v. Makela*, 66 Wn. App.

164, 168, 831 P.2d 1109 (1992) (ER 801(d)(1)(ii)). Discretion is abused where it is

exercised on untenable grounds or for untenable reasons. *State ex rel. Carroll v. Junker*, 79

Wn.2d 12, 26, 482 P.2d 775 (1971). A court also abuses its discretion when it applies the

wrong legal standard. *State v. Rafay*, 167 Wn.2d 644, 655, 222 P.3d 86 (2009).

"Hearsay" is a statement, other than one made by the declarant while testifying at

the trial or hearing, offered in evidence to prove the truth of the matter asserted. ER

801(c). Prior statements of testifying[4] witnesses are considered hearsay unless they fall

under an exclusion or exception to the hearsay rule. Hearsay exclusions include the

nonhearsay categories of ER 801(d)(1), one of which is a prior inconsistent statement

under oath. Similarly, one of the many hearsay exceptions is for past recollections

---

[4] As Mr. Snodgrass was present at trial and subject to cross-examination, the
confrontation issues implicated by use of *Smith* affidavits are not discussed in this
opinion. *But see Crawford v. Washington*, 541 U.S. 36, 51, 124 S. Ct. 1354, 158 L. Ed.
2d 177 (2004).

6

recorded. ER 803(a)(5). Prior statements that directly contradict the witness' testimony qualify as inconsistent statements, as do statements that differ in a significant way from the witness' testimony. ER 613; *State v. Johnson*, 40 Wn. App. 371, 377, 699 P.2d 221 (1985). Less clear are borderline situations when the witness claims to have forgotten certain facts at issue, or simply refuses to give any substantive testimony.

When a witness whose credibility is a fact of consequence to the action testifies at trial about an event, but claims to have no knowledge of a material detail, or no recollection of it, most courts permit a prior statement indicating knowledge of the detail to be used for impeachment. *State v. Newbern*, 95 Wn. App. 277, 292, 975 P.2d 1041 (1999). To be admissible for impeachment purposes, a witness' in-court testimony need not directly contradict the witness' prior statement; "'inconsistency is to be determined, not by individual words or phrases alone, but the whole impression or effect of what has been said or done.'" *Id.* at 294 (quoting *Sterling v. Radoford*, 126 Wash. 372, 375, 218 P. 205 (1923)). If a person's credibility is a fact of consequence to the action, the jury needs to assess it, and impeaching evidence may be helpful. *State v. Allen S.*, 98 Wn. App. 452, 459-460, 989 P.2d 1222 (1999).

A prior inconsistent statement admitted solely for purposes of impeaching the credibility of a witness under ER 613, does not constitute substantive evidence, and the court should give a limiting instruction to that effect. Under ER 801(d)(1)(i), however, if the prior statement was "given under oath subject to the penalty of perjury at a trial,

7

hearing, or other proceeding, or in a deposition," it would be admissible substantively. Written affidavits given to police officers may meet the definition of "under oath" and "other proceedings" for purposes of ER 801(d)(1). *State v. Smith*, 97 Wn.2d at 860-862. As the phrase "other proceeding" in ER 801(d) is intentionally open-ended, the *Smith* court emphasized that the purposes of the rule, the reliability of each statement, and the facts of each case must be specifically analyzed. *State v. Otton*, 185 Wn.2d 673, 682, 374 P.3d 1108 (2016).

*Smith* established a four-factor test for determining whether a police interview qualifies as an "other proceeding" and whether an affidavit produced during that meeting is "under oath." *State v. Nelson*, 74 Wn. App. 380, 386-387, 874 P.2d 170 (1994). Those factors are whether: (1) the witness voluntarily made the statement, (2) there were minimal guaranties of truthfulness, (3) the statement was taken as standard procedure in one of the four legally permissible methods for determining the existence of probable cause,[5] and (4) the witness was subject to cross-examination when giving the subsequent inconsistent statement. *Smith*, 97 Wn.2d at 861-863. *Otton* reaffirmed this approach. *Otton*, 185 Wn.2d at 680. The *Smith* factors overlap, and specify, the definition of a non-hearsay prior statement under ER 801(d)(1)(i). That rule requires a showing that the

---

[5] The four methods are (1) filing of an information by the prosecutor in superior court, (2) grand jury indictment, (3) inquest proceedings, and (4) filing of a criminal complaint before a magistrate. *Smith*, 97 Wn.2d at 862 (citations omitted).

8

witness "'testifies at the trial or hearing and is subject to cross examination concerning the statement, and the statement is (i) inconsistent with the declarant's testimony, and was given under oath subject to the penalty of perjury at a trial, hearing, or other proceeding.'" *Id.* at 679 (quoting ER 801(d)(1)).

Mr. Brown argues both that it was error to impeach Snodgrass with the statement and to admit the statement as substantive evidence. Admitted evidence may be used for all proper purposes. *Micro Enhance v. Coopers & Lybrand*, 110 Wn. App. 412, 430, 40 P.3d 1206 (2002).[6] Since we conclude that the statement was properly admitted as substantive evidence under *Smith*, we need not separately consider whether it was properly admitted for impeachment purposes and do not further address that argument.

Here, the trial court reviewed ER 801(d)(1) and concluded it was proper to admit the statement under that rule. RP at 335-336. Mr. Snodgrass voluntarily spoke to Detective Wallace, who wrote down what Mr. Snodgrass said. Mr. Snodgrass also signed and dated the statement, which also identified the location where it was taken and indicated it was made under penalty of perjury. Ex. 54. The statement thus satisfied the certification requirements of RCW 9A.72.085(1). The record also reflects that it satisfied the specific requirements of *Smith*: it was voluntarily made in the course of a police investigation used to establish probable cause for charging the offense of arson. The

---

[6] *Cf.* ER 105 (requiring jury instruction when evidence is admitted for limited purpose).

detective's testimony concerning the creation of the statement establishes the "minimal guaranties of truthfulness": Mr. Snodgrass gave the statement, the officer wrote it out, Mr. Snodgrass read the statement and signed it under penalty of perjury after having the opportunity to amend it. RP at 332-334. Indeed, the only objection defense counsel raised was that the statement was cumulative evidence and therefore did not need to be admitted. RP at 335, 336.

The statement was in the form used and approved in *Smith*. The detective provided testimony concerning the circumstances of the making of the statement. The trial court therefore had tenable grounds for admitting the exhibit as substantive evidence. The court did not err.[7]

*Intervention of Trial Judge*

Appellant next challenges the trial court's directive to the prosecutor to impeach Mr. Snodgrass despite not objecting to the process during trial. Mr. Brown contends this was a violation of the separation of powers doctrine. He has no standing to raise such a claim, which more properly sounds in due process or the appearance of fairness doctrine. Although we are concerned about how the court used its trial management authority, and

---

[7] This conclusion also resolves Mr. Brown's argument that the prosecutor committed misconduct in calling Snodgrass for the sole purpose of impeaching him. That was not the case. Mr. Snodgrass had relevant evidence to offer and was required to provide that information at trial. *State v. Ruiz*, 176 Wn. App. 623, 634-635, 309 P.3d 700 (2013), *review denied*, 179 Wn.2d 1015, *cert. denied*, 190 L. Ed. 2d 63 (2014). The prosecutor did not err in calling him to the stand. *Id.* at 634-640.

we caution against similar behavior in the future, the admission of the testimony under

*Smith* rendered any error harmless.

The separation of powers doctrine does not involve any rights of the individual:

> Unlike many other constitutional violations, which directly damage rights retained by the people, the damage caused by a separation of powers violation accrues directly to the branch invaded. The maintenance of a separation of powers protects institutional, rather than individual, interests.

*Carrick v. Locke*, 125 Wn.2d 129, 136, 882 P.2d 173 (1994). Accordingly, Mr. Brown

lacks standing to claim that the separation of powers doctrine was violated. *See State v.

Gutierrez*, 50 Wn. App. 583, 591-592, 749 P.2d 213 (1988) (no standing to assert

violation of rights of another).

Mr. Brown might have been able to fashion this claim as a violation of the

appearance of fairness of doctrine but for the fact that he did not challenge the judge's

action at trial. The appearance of fairness doctrine is not constitutional in nature and,

hence, cannot be raised initially on appeal. RAP 2.5(a); *State v. Blizzard*, 195 Wn. App.

717, 725, 381 P.3d 1241 (2016), *review denied*, 187 Wn.2d 1012 (2017).

Accordingly, it appears that this argument is better considered as a due process

right to a fair trial claim. *E.g., State v. Moreno*, 147 Wn.2d 500, 506-512, 58 P.3d 265

(2002) (statute permitting judges to call and question witnesses in traffic infraction

proceedings). Mr. Brown also argues this challenge from this perspective.

Trial judges have broad discretion to manage their courtrooms and conduct trials fairly, expeditiously, and impartially; they must exercise reasonable control over the mode and order of interrogating witnesses and presenting evidence so as avoid needless consumption of time. ER 611(a)(2). A trial court is responsible to ensure the evidence is fully developed for the jury and to resolve, as far as possible, any ambiguities or conflicts in the evidence. *Moreno*, 147 Wn.2d at 509. This court, therefore, reviews a trial judge's courtroom management decisions for abuse of discretion. *Peluso v. Barton Auto Dealerships, Inc.*, 138 Wn. App. 65, 69, 155 P.3d 978 (2007).

Due process requires, among many other things, that a tribunal be fair. *Moreno*, 147 Wn.2d at 506-507. That fairness obligation can be violated when a judge dons "executive and judicial hats at the same time." *Id.* at 507. Also, colloquies between the court and counsel hold the potential to present a fair trial challenge. *State v. Ingle*, 64 Wn.2d 491, 499, 392 P.2d 442 (1964). On these facts, only that last concern is implicated. The trial court did not undertake the prosecution function; the court did not question Snodgrass, nor did it give the directive in the presence of the jury. Instead, the problem arose from the apparent command given the prosecutor in the colloquy outside the jury's presence.

The court was free in its exercise of its courtroom management authority to tell the prosecutor to move on, and perhaps even to give an "either/or" directive (such as "impeach him if that is what you are trying to do or else move on to another subject")

12

since a significant amount of time had passed without the testimony substantively progressing in any manner. However, the language used appeared to tell the prosecutor how to try his case as if the prosecutor was a functionary of the judge. That would create a fair tribunal issue if that was what the judge truly intended. For a couple of reasons, we think, however, that this was actually a diction problem.

First, the defense did not object to the court's language or proposal. In this context, we think that defense counsel simply did not see the directive as serious error, but merely viewed the statement as nothing other than the judge telling the prosecutor to move on from his flailing around. *Cf. State v. Swan*, 114 Wn.2d 613, 661, 790 P.2d 610 (1990) (Noting that the absence of an objection or motion for mistrial "strongly suggests to a court that the argument or event in question did not appear critically prejudicial to an appellant in the context of the trial."). Second, the evidence ultimately was admitted for substantive purposes on the motion of the prosecutor. As discussed previously, this made the impeachment proper. The evidence was before the jury for all purposes, rendering the judge's statement nothing more than inartful phrasing. It did not lead to the admission of improper evidence.

Accordingly, although we wish the judge had stated his comment differently, it was not such a significant matter that it demonstrated that the tribunal was biased against Mr. Brown. Most certainly the use of properly admitted evidence did not deprive Mr. Brown of a fair trial.

13

The comment did not amount to reversible error.

*Testimony of Ms. Emery*

Mr. Brown next argues that the trial court erred in its handling of the two statements by Ms. Emery that the trial court ultimately struck from the record. Since the defense never asked the trial court for any additional relief, there is nothing more to be done on appeal.

As noted earlier, Ms. Emery on separate occasions stated "Gary burned it," and that others wanted the trailer burned and "coaxed Gary Taylor into doing it." The improper admission of evidence at trial is considered a "trial irregularity." *State v. Weber*, 99 Wn.2d 158, 163, 659 P.2d 1102 (1983); *accord State v. Emery*, 174 Wn.2d 741, 750, 278 P.3d 653 (2012) (one defendant interrupted the other's testimony to accuse him of perjury). When inadmissible testimony is put before the jury, the trial court should declare a mistrial if the irregularity, in light of all of the evidence in the trial, so tainted the proceedings that the defendant was deprived of a fair trial. *Weber*, 99 Wn.2d. at 164. In deciding that question, a court will consider whether a curative instruction would have been useful. *Id.* at 165. The decision whether or not to grant a new trial due to a trial irregularity is a matter left to the discretion of the trial court since the trial judge is in the best position to assess the harm, if any, caused by the irregularity. *Id.* at 166. "The question is not whether this court would have decided otherwise in the first

instance, but whether the trial judge was justified in reaching his conclusion." *State v. Taylor*, 60 Wn.2d 32, 42, 371 P.2d 617 (1962) (trial court order granting new trial).

However, this approach fails Mr. Brown because he never sought a mistrial or a new trial over the Emery testimony. It is presumed that jurors "followed the judge's instructions to disregard the remark." *Weber*, 99 Wn.2d at 166. Mr. Brown does not suggest that there is any indication that jurors disregarded the trial court's instructions. Thus, we have no reason for concluding that the trial court abused discretion it was never asked to exercise.

Instead, Mr. Brown is left to argue that Ms. Emery's remarks constituted an improper invasion of the jury's province to determine guilt or innocence by expressing a personal opinion on his guilt. *State v. Montgomery*, 163 Wn.2d 577, 591, 183 P.3d 267 (2008). Opinion testimony that is "'based on one's belief or idea rather than on direct knowledge of the facts at issue'" is generally inadmissible to indicate the guilt or innocence of a defendant. *State v. Demery*, 144 Wn.2d 753, 760, 30 P.3d 1278 (2001) (quoting BLACK'S LAW DICTIONARY, 1486 (7th ed. 1999). Whether testimony constitutes an impermissible opinion on guilt or a permissible opinion embracing an "ultimate issue" will generally depend on the specific circumstances of each case, including the type of witness involved, the specific nature of the testimony, the nature of the charges, the type of defense, and the other evidence before the trier of fact. *Id.* at 759.

15

Unlike *Montgomery* and many similar cases, here the opinion testimony of the victim was stricken from the record. Unlike *Weber* and its progeny, the trial court was not asked to give additional relief. Accordingly, Mr. Brown can only obtain relief in this circumstance if the stricken remarks were so egregious that no remedy other than a new trial would suffice. *Weber*, 99 Wn.2d at 164. For several reasons, we think that is not the case here. First, as noted previously, the failure to seek further relief in this circumstance strongly suggests that no additional relief was needed. *Swan*, 114 Wn.2d at 661. Second, it is unlikely that the jury was unduly swayed by the emotional victim's testimony given her obvious bias against the defendant. That the victim of an arson fire would blame the accused is not something beyond the common understanding of the jury, which would discount her baseless opinion accordingly. Finally, the prosecution did not rely on the stricken statements to tie the defendant to the crime. His own statement, as well as the eyewitness testimony putting him at the scene when the fire started, were much stronger evidence linking him to the crime. The stricken evidence pales in significance.

Accordingly, there is no reason to believe that any relief other than that sought and obtained at trial was necessary in this instance. The stricken remarks, which also were the subject of cautionary instructions, were not of such significance to require further relief.

*Effective Assistance of Counsel*

Mr. Brown next argues that his counsel performed ineffectively in not objecting to the Snodgrass impeachment and by failing to seek a mistrial over Ms. Emery's stricken remarks. This derivative argument is unnecessary and unavailing.

Ineffective assistance claims require proof that a defense attorney failed to perform to the standards of the profession; that failure will require a new trial when it results in prejudice to the client. *State v. McFarland*, 127 Wn.2d 322, 334-335, 899 P.2d 1251 (1995). In evaluating ineffectiveness claims, courts must be highly deferential to counsel's decisions. A strategic or tactical decision is not a basis for finding error. *Strickland v. Washington*, 466 U.S. 668, 689-91, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). Under *Strickland*, courts apply a two-prong test: whether or not (1) counsel's performance failed to meet a standard of reasonableness and (2) actual prejudice resulted from counsel's failures. *Id.* at 688-692. When a claim can be resolved on one ground, a reviewing court need not consider both *Strickland* prongs. *Id.* at 697; *State v. Foster*, 140 Wn. App. 266, 273, 166 P.3d 726, *review denied*, 162 Wn.2d 1007 (2007).

The ineffective assistance argument is unavailing here for the reasons previously stated. The Snodgrass statement was properly admitted as substantive evidence, so it was also properly used for impeachment. Counsel did not err in failing to raise further challenges. The stricken Emery statements have not been shown to have been so prejudicial that the trial court's actions were ineffectual. Even if counsel should have

17

sought a mistrial, a question we do not reach, appellant has not established that he was prejudiced by the failure.

The ineffective assistance argument is without merit.

*Ms. Ferry's Testimony*

Mr. Brown also challenges Ms. Ferry's testimony concerning his statements to her about a telephone conversation he was having with Orellana-Arita and Haley. He argues that this was double hearsay and a violation of his confrontation right. The latter argument can be rejected summarily. A conversation between acquaintances does not constitute testimonial hearsay that raises confrontation clause questions. *State v. Wilcoxon*, 185 Wn.2d 324, 373 P.3d 224, *cert. denied*, 137 S. Ct. 580 (2016) (statement by one defendant to other acquaintance not testimonial hearsay under confrontation clause).

We have previously noted that we review a trial court's evidentiary rulings for manifest abuse of discretion. *Luvene*, 127 Wn.2d at 707. The testimony at issue was reflected in Ms. Ferry's testimony that "everybody" wanted the victims out of the trailer. RP at 92. Her testimony also noted that she had previously been warned not to repeat what Brown claimed others had said. As the trial court correctly noted, the prosecutor's question did not elicit a hearsay response because it asked for Ms. Ferry to report what Mr. Brown had said, not what he reported others as having said. His statement was not hearsay since it was offered against him. ER 801(d)(2). At the conclusion of the passage

18

in question, her answer reflected her summation of the conversation—"everybody" wanted them out—but did not repeat anyone's specific statement to that effect. Ferry did not report any quotation Brown may have supplied to her.

This statement was not hearsay. Moreover, the defense never challenged that statement after it was uttered, presumably because it did not violate the court's order not to relate hearsay. Ms. Ferry did not report anything that someone else stated. The trial court did not manifestly abuse its discretion in admitting the testimony.

*Firefighter's Testimony*

Lastly, Mr. Brown contends that firefighter Danny Mohr, a twelve-year volunteer firefighter, was erroneously allowed to voice expert opinions concerning the fire. We discern no abuse of discretion.

After Mohr, the first responder, described the characteristics of the fire when he arrived, he indicated that the burning was "unusual for mobile home fire." The court sustained defense counsel's objection that Mohr was not qualified to issue an expert opinion. The prosecutor then laid a foundation with Mohr describing his experience with mobile home fires. The court permitted Mohr to tell jurors how this fire burned differently from other mobile home fires he had fought. RP at 53. He then testified that most trailer fires he had seen spread out from the point of ignition instead of burning solely in that area. RP at 56-57. Mohr also told jurors he was not an investigator and did not express an opinion concerning the cause of the fire. RP at 57.

19

Mr. Brown contends on appeal that Mohr was improperly permitted to express an expert opinion. We disagree. Although an expert can express an opinion that is based on either training or experience, ER 702, Mohr did not do so here. Rather, he explained his previous experience with trailer fires and indicated how this fire differed from those fires. To the extent this was "opinion" testimony at all, it was based on his experiences rather than on technical scientific information and, therefore, was admissible as lay opinion testimony. *See* ER 701. However, the trial court expressly prohibited Mohr from expressing an opinion, and he did not do so. Instead, he told the jurors about the burning he observed in this trailer and the burning he usually observed in trailer fires. RP at 56-57. These were factual observations. It was the fire investigator, a witness whose testimony is unchallenged on appeal, who stated this fire was set with a flammable liquid. Mohr did not state any improper opinions.

The trial court properly circumscribed Mr. Mohr's testimony. There was no error, let alone abuse of discretion.

Finally, Mr. Brown requests that we waive appellate costs in the event the State substantially prevails on appeal. We decline to address the request. In the event that the State files a cost bill, our commissioner will entertain a timely objection in accordance with the provisions of RAP 14.2.

20

No. 34980-2-III
*State v. Brown*

The conviction is affirmed.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Korsmo, J.

WE CONCUR:

_____
Lawrence-Berrey, A.C.J

_____
Siddoway, J.

21