IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | No. 35765-1-III |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| MANUEL R. GUZMAN, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | |

KORSMO, J. — Manuel Guzman appeals from a jury determination that he committed fourth degree assault against his wife, Esfeidy Guzman. Concluding that the trial court properly admitted evidence of her initial complaint to police to impeach her trial testimony and that the prosecutor's misconduct in treating that testimony as substantive evidence in closing argument could have been cured with an objection, we affirm.

FACTS

The Guzmans and their minor child, a boy, lived in the same house with Esfeidy's parents, Micaela Hernandez and Jose Jimenez. On the night of August 26, 2017, the child awakened his grandmother to report that his parents were fighting. Ms. Hernandez went

to the door of the younger couple's bedroom and testified that she saw the defendant slap her daughter. When she entered the room to confront Mr. Guzman, he pushed her out of the room.

At the hospital, Esfeidy told Pasco Police Department Officer Jacinto Nuñez that her husband had punched, poked, slapped, and choked her during an argument in their bedroom, and that her mother had come to the room during the argument. Officer Nuñez subsequently arrested Manuel Guzman, who admitted to holding her down.

The prosecutor filed charges against Manuel Guzman of second and third degree assault involving Esfeidy Guzman and fourth degree assault and harassment of her mother. The case proceeded to jury trial. At trial, Esfeidy testified that she did "not really" remember what happened on the night of August 25 due to illness and medication. Although stating that she did not remember much, she was able to testify to some basic information about living arrangements at the house. When asked specific questions concerning statements she had made to Officer Nuñez, she repeatedly stated that she did not remember. She did recall her mother coming to the room. She also testified that she "probably" went to Lourdes Hospital, but denied remembering whether she talked to Officer Nuñez.

The State then called Officer Nuñez as its next witness, seeking to admit Esfeidy's statements to the officer solely for impeachment under ER 613. The defense objected, but the court granted the request after stating its belief that Ms. Guzman was feigning

2

lack of recall. At defense request, the court orally instructed the jury that the statements were to be considered solely for the purpose of impeachment.[1] After the State rested, it moved to dismiss the third degree assault and harassment charges for lack of evidence. It also obtained an instruction on fourth degree assault, as a lesser included offense, in lieu of the second degree assault charge. Thus, the jury was instructed only on two charges of fourth degree assault.

During argument, the prosecutor told jurors that Esfeidy's trial testimony was not credible and that her statements to Officer Nuñez were not substantive evidence they could consider. Nonetheless, he also argued that her actions in going to the emergency room and talking to the officer constituted circumstantial evidence the jury could consider. He also twice told the jury that it was not being asked to decide whether Mr. Guzman had choked her, but that there was other evidence of assault. At no time did defense counsel object to these statements.

The jury convicted Mr. Guzman of assaulting his wife, but acquitted him of assaulting his mother-in-law. He timely appealed that conviction to this court. A panel considered his appeal without hearing argument.

---

[1] The court also provided a written instruction. Clerk's Papers at 26.

ANALYSIS

This appeal presents two arguments.[2]  Mr. Guzman first contends that the trial court erred in admitting Ms. Guzman's statements for purposes of impeachment.  He also argues that the prosecutor committed misconduct in his argument about that evidence.  We consider his contentions in the order listed.

*Statements to Officer Nuñez*

Mr. Guzman argues that the court erred in admitting Esfeidy's statements to the officer as impeachment evidence.  We conclude that the trial court did not abuse its discretion.

Trial judges have great discretion in the admission of evidence; thus, decisions to admit or exclude evidence will be overturned only for manifest abuse of discretion.  *State v. Luvene*, 127 Wn.2d 690, 706-707, 903 P.2d 960 (1995); *State v. Makela*, 66 Wn. App. 164, 168, 831 P.2d 1109 (1992) (ER 801(d)(1)(ii)).  Discretion is abused where it is exercised on untenable grounds or for untenable reasons.  *State ex rel. Carroll v. Junker*,

---

[2] Mr. Guzman also filed a pro se statement of additional grounds.  RAP 10.10. Two of the matters referenced therein involve evidence outside of the record and cannot be considered here.  *State v. Calvin*, 176 Wn. App. 1, 26, 316 P.3d 496 (2013).  The other ground involves an allegation that his in-laws contradicted each other in their testimony. Witness credibility is exclusively the province of the jury and will not be reconsidered on appeal.  *Herriman v. May*, 142 Wn. App. 226, 234, 174 P.3d 156 (2007).

4

79 Wn.2d 12, 26, 482 P.2d 775 (1971).  A court also abuses its discretion when it applies the wrong legal standard.  *State v. Rafay*, 167 Wn.2d 644, 655, 222 P.3d 86 (2009).

A prior inconsistent statement admitted solely for purposes of impeaching the credibility of a witness under ER 613 does not constitute substantive evidence, and the court should give a limiting instruction to that effect.  ER 105.  When a witness whose credibility is a fact of consequence to the action testifies at trial about an event, but claims to have no knowledge of a material detail, or no recollection of it, most courts permit a prior statement indicating knowledge of the detail to be used for impeachment.  *State v. Newbern*, 95 Wn. App. 277, 292, 975 P.2d 1041 (1999).  To be admissible for impeachment purposes, a witness' in-court testimony need not directly contradict the witness' prior statement: "'inconsistency is to be determined, not by individual words or phrases alone, but the *whole impression or effect* of what has been said or done.'"  *Id.* at 294 (quoting *Sterling v. Radford*, 126 Wash. 372, 375, 218 P. 205 (1923)).  If a person's credibility is a fact of consequence to the action, impeachment evidence can be helpful to the jury's need to assess credibility.  *State v. Allen S.*, 98 Wn. App. 452, 459-460, 989 P.2d 1222 (1999).

Here, Esfeidy Guzman's credibility was central to the case—she was the primary victim and had reported the offense to the police, but she was refusing to cooperate at trial.  Her testimony helped establish that something happened on the night in question, and she confirmed her mother's presence during the event.  She also admitted "probably"

5

going to the hospital in the aftermath of the incident. On this record, the trial judge

correctly determined that Ms. Guzman was attempting to avoid testifying about the

incident by claiming lack of recall of the significant details. Her refusal to discuss the

details downplayed the event, implicitly supporting her husband's contention that nothing

happened. This made her subject to impeachment. *Newbern*, 95 Wn. App. at 293. The

trial court had a tenable basis for allowing impeachment with her detailed statement

about the event.

The court did not abuse its discretion in admitting Ms. Guzman's statements to the

officer.

*Closing Argument*

Mr. Guzman also contends that the prosecutor committed misconduct by treating

her statement as substantive evidence in closing argument. Although we agree that the

prosecutor erred, it was not such a significant error that a timely objection could not have

cured it.

Well settled law governs review of this issue. The appellant bears the burden of

demonstrating prosecutorial misconduct on appeal and must establish that the conduct

was both improper and prejudicial. *State v. Stenson*, 132 Wn.2d 668, 718, 940 P.2d 1239

(1997). Prejudice occurs where there is a substantial likelihood that the misconduct

affected the jury's verdict. *Id.* at 718-719. The allegedly improper statements should be

viewed within the context of the prosecutor's entire argument, the issues in the case, the

6

evidence discussed in the argument, and the jury instructions. *State v. Brown*, 132 Wn.2d

529, 561, 940 P.2d 546 (1997).

Reversal is not required where the alleged error could have been obviated by a

curative instruction. *State v. Gentry*, 125 Wn.2d 570, 596, 888 P.2d 1105 (1995). The

failure to object constitutes a waiver unless the remark was so flagrant and ill-intentioned

that it evinced an enduring and resulting prejudice that could not have been neutralized

by an admonition to the jury. *Id.*; *State v. Swan*, 114 Wn.2d 613, 665, 790 P.2d 610

(1990); *State v. Belgarde*, 110 Wn.2d 504, 507, 755 P.2d 174 (1988). Finally, a

prosecutor has "wide latitude" in arguing inferences from the evidence presented.

*Stenson*, 132 Wn.2d at 727.

Mr. Guzman argues that the prosecutor treated the impeachment testimony related

by Officer Nuñez as substantive evidence of guilt. We partially agree with that argument.

Although repeatedly telling the jury that the statements related by Nuñez were not

substantive evidence, the prosecutor still referenced the substance of those allegations

when he told jurors that the choking was not the basis for the case. By doing so, he

treated the choking as a matter of substantive fact even while explaining that he did not

have to prove that it occurred.

This was unnecessary and effectively acted as if there was actual evidence of

choking before the jury. The prosecutor's case was based on the testimony of Ms.

Hernandez. To the extent that there was any need to reference the topic of the statements

made to Officer Nuñez, all that needed to be said was that it was not the incident that the jury had to consider when assessing guilt or innocence. The State's case focused on the incident in the bedroom and Ms. Hernandez provided the substantive evidence of the assault. The repeated references to the incident recited by Ms. Guzman to the officer ran the risk of the jury treating that assault as a matter of substantive fact rather than of impeachment.

However, this error could easily have been cured by a timely objection. The court and both parties told the jurors that the statements to Nuñez were not substantive evidence and were not the basis of the charge. A timely reminder when the prosecutor's repetition might suggest to the contrary would easily have corrected the error.

Accordingly, Mr. Guzman has not established that the prosecutor engaged in prejudicial misconduct.

Mr. Guzman asks that we strike the $200 criminal filing fee imposed at sentencing. A decision released after the sentencing in this case determined that statutory changes to legal financial obligation assessments apply retroactively to cases on appeal. *State v. Ramirez*, 191 Wn.2d 732, 735, 426 P.3d 714 (2018). As a result, indigent offenders need not pay the criminal filing fee. Since Mr. Guzman is indigent, we direct that the trial court strike that assessment.

He also asks that we disallow costs on appeal due to his indigency. By the terms of RAP 14.2 and our General Order of February 19, 2019, we leave that issue to our commissioner in the event that the State seeks costs in this court.

Conviction affirmed. Remanded to strike the filing fee.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

Korsmo, J.

WE CONCUR:

Fearing, J.

Siddoway, J.