# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 56606-1-II |
| Respondent, | |
| v. | UNPUBLISHED OPINION |
| BRIAN JUSTIN GREEN, | |
| Appellant. | |

CHE, J. — Brian Green appeals the trial court's evidentiary ruling admitting a witness's prior inconsistent statement and imposition of discretionary supervision fees. In December 2020, Green, Tory Causey, Autanya Hayes, and Ruben Killian-Horace were partying together at Hayes' residence. After Hayes asked everyone to leave, Killian-Horace began loading his belongings into his vehicle and was shot. When Killian-Horace turned around, he observed Green and Causey, "standing there," Green fumbling with a firearm. Later that day, Helen Baker, Green's mother, took Green to the police department because "something happened."

Subsequently, the State charged Green with one count of second degree attempted murder with a firearm enhancement, one count of first degree assault with a firearm enhancement, and one count of first degree unlawful possession of a firearm. At trial, the court admitted Baker's prior inconsistent statement that "she had brought her son to the police department that day because he was involved in a shooting." The trial court twice issued a limiting instruction concerning Baker's prior statement and credibility. The jury convicted

Green of one count of first degree assault armed with a firearm and one count of first degree unlawful possession of a firearm.

We hold that the trial court did not abuse its discretion in admitting Baker's prior statement and Green's judgment and sentence erroneously includes discretionary supervision fees where the trial court had made a finding of indigency and intended to waive nonmandatory fees. Furthermore, we hold that amended RCW 7.68.035(4) applies and the trial court should reconsider imposition of the victim penalty assessment (VPA). Accordingly, we affirm Green's conviction and remand solely to strike the discretionary fees from his judgment and sentence and to reconsider his indigency and imposition of the VPA.

FACTS

I. BACKGROUND

Brian Green is Autanya Hayes' uncle. Hayes and Ruben Killian-Horace have been in an "on-and-off relationship for . . . 12 years" and have two children together. 3 Rep. of Proc. (RP) at 352. At the time of the incident, Killian-Horace lived with Hayes and their children.

In December 2020, Green, Killian-Horace, and Tory Causey[1] were at a party. The group was drinking alcohol and Killian-Horace did cocaine. While at the party, Killian-Horace observed Causey with a 9mm firearm. After the party ended in the early morning hours, the men went back to Hayes' house where the group continued to drink and use drugs. At some point, Hayes and Killian-Horace began arguing concerning the "kids being [a]sleep and it being a little loud in the house." 3 RP at 359. Hayes told everyone to leave and Killian-Horace began loading his belongings and Christmas presents into his vehicle. During the process of moving his things,

---

[1] Causey is Hayes' cousin but is not related to Green.

Killian-Horace became "destructive," knocking over the family's Christmas tree and damaging Hayes' television.[2]  3 RP at 364.

While Killian-Horace was carrying a lawnmower to his vehicle he heard gunshots but could not see the shooter, nor did he know who was shooting.  Killian-Horace did not realize that he had been shot until he could not feel his legs.  When Killian-Horace turned to walk back to Hayes' house for help, he was shot again in the stomach causing his eyesight to become blurry.  Before Killian-Horace lost his sight, he saw Green and Causey "standing there."  2 RP at 254.  Killian-Horace described Green as "fumbling a [black, 9mm] gun, . . . toying with it."  2 RP at 254.[3]  Killian-Horace also described seeing Green shoot Killian-Horace in the stomach.  Following the shooting, Killian-Horace ran for cover and saw a vehicle driving quickly down the street.  Although Killian-Horace could not remember the color of the vehicle, he recognized it as a Hyundai sedan style vehicle.

Police responded to the scene after receiving multiple reports of a shooting.  Investigating officers spoke with witnesses and were "given a possible vehicle description of [a] tan or brown sedan."  3 RP at 442.  Searching the scene for evidence, officers recovered a live round and nine spent shell casings in Hayes' driveway and yard.  Officers identified the type of ammunition as being 9 mm.

---

[2] Killian-Horace denied "destroying any property inside the house."  2 RP at 249.

[3] Killian-Horace later testified that he previously stated he was not certain if Green pulled the trigger or if Causey "pulled the trigger and threw the gun at [Green]."  2 RP at 267.

## II. TRIAL TESTIMONY

The State charged Green with one count of second degree attempted murder with a firearm enhancement, one count of first degree assault with a firearm enhancement, and one count of first degree unlawful possession of a firearm.

At trial, the State called numerous witnesses, including, Baker. Prior to Baker's testimony, Green raised two concerns with the trial court. Pertinently, Green raised the issue of what evidence "gets to come in versus what [evidence] can be used for impeachment" where witnesses "testify to a lack of memory about a number of things." 3 RP at 409. Defense counsel explained,

> I think if someone says, 'I don't remember, you know, this,' or you say, 'Well, do you remember telling the officer this?' and [the witness says], 'I don't remember,' [then Green's] position would be based on the rules of evidence that that's done. There's nothing to impeach because they don't remember it as opposed to then calling the officer and asking the officer the question.

3 RP at 409. The trial court and the State agreed with Green's understanding of impeachment. The parties further agreed that if Baker's testimony presented impeachment issues, they "might need to take that up outside the presence of the jury." 3 RP at 413. The trial court concluded, "Let's have [Baker] testify, and then if either one of you wishes to address the Court, let's just ask for a brief recess, and we'll send [the jury] back in for a shorter time, and we'll address it then." 3 RP at 414.

Subsequently, Baker testified that she took Green to the Lakewood Police Department on the day of the shooting. On direct examination, the following exchange occurred:

> State: [W]hen you went to the Lakewood Police Department that day with [Green], do you remember telling the officer that you spoke with why it was you were there?

> Baker: No.

3 RP at 421. On cross-examination defense counsel clarified:

> Defense: And I believe that you just said that you do not remember telling any officer that [Green] was involved in a shooting; is that right?
>
> Baker: Right.
>
> Defense: Do you remember telling any officer that [Green] didn't do anything and he never had a gun?
>
> Baker: Nope. Don't remember.
>
> Defense: Do you remember telling the officer that [Green] didn't shoot anyone?
>
> Baker: Nope. I think -- they might have said that when they came to search my house. I might have said something like that.
>
> Defense: Later when they came to your house?
>
> Baker: Yes.

3 RP at 422. On redirect, the State further inquired:

> State: Would -- did you tell the police officer that you spoke with that day at that apartment that you had brought [Green] there because he had been involved in a shooting?
>
> Baker: No.

3 RP at 423. On recross, defense counsel sought "clarity," inquiring:

> Defense: Initially, you were asked if you remember telling an officer that [Green] was involved in a shooting. And your answer was you don't remember saying that; is that right?
>
> Baker: I don't remember if I did. I don't remember. It's been so long. I really don't. I'm trying to in my head remember. The only thing I can remember -- I don't even know if I even said that. I don't even know you know.
>
> Defense: So you don't remember if you said it or not?
>
> Baker: Yeah, I don't remember.

3 RP at 424. The State did not ask Baker any further questions and instead asked that the court recess.

During recess, the State explained that its next witness, Officer Jared Pingul, would testify that Baker told him, "My son was involved in the shooting this morning and wanted to turn himself in." 3 RP at 425. The State argued that

> based on [Baker's testimony], Officer Pingul should be allowed to say that the woman he spoke with that day said, 'I brought my son here because he was involved in a shooting today.' . . . I will tell [Pingul] not to say [Green is] here to turn himself in or something to that effect. But I think that the statement which is quoted in there about bringing the son here to turn himself -- or to bring -- because he was involved in a shooting, that's a prior inconsistent statement. I think that goes to [Baker's] credibility. . . . If the Court is going to allow [the State] to elicit that testimony from Officer Pingul, I would ask that the limiting instruction be given.

3 RP at 426. In turn, defense counsel argued:

> I think [Baker] said a number of things. Some of them were, 'I don't remember. I don't remember saying that.' And, again, I think we discussed before the lunch break, if the answer is, 'I don't remember,' then we're done because there's nothing to impeach. So that would be my position.

3 RP at 427. Having heard the parties' arguments the trial court concluded

> My notes indicate that during direct -- and this is not verbatim, but that I think there was a question about, you know, the decision to go to the Lakewood Police Department and then when you were at the Lakewood Police Department did you tell an officer why you were there? Answer: No. So I think that that -- I understand later [Baker] said, 'I don't remember.' But she was clear in that answer that no she did not tell anyone that her son was involved in a shooting. So I'm going to allow . . . the State to ask Officer Pingul that particular question with [the] limiting instruction and with the understanding that there will be no discussion about he came to turn himself in.

3 RP at 427.

Pingul testified immediately after Baker. Pingul explained that a woman, approached him in the police station parking lot and that a young man was with her. Before Pingul continued with his testimony, the State requested, and the trial court provided, the following jury instruction:

> I am allowing this evidence, but you may consider the answers only for the purpose of determining the credibility of Helen Baker. You may not consider the answers for any other purpose.

3 RP at 432-33. Pingul continued with his testimony explaining that Baker told him "she had brought her son to the police department that day because he was involved in a shooting." 3 RP at 433. Green did not object when Pingul testified to the impeachment statement.

Green did not testify.

### III. VERDICT AND SENTENCING

The jury convicted Green of one count of first degree assault while armed with a firearm and one count of first degree unlawful possession of a firearm.[4] The trial court sentenced Green to 180 months of total confinement. During Green's sentencing hearing the trial court made a finding of indigency and stated its intention to "waive all non mandatory fines and costs." 7 RP at 741. Green's judgment and sentence reflects the trial court's finding of indigency. The trial court checked the box that Green was indigent under RCW 10.101.010(3)(a)-(c)[5] and noted that Green is indigent based on his being represented by assigned counsel. Despite the trial court's indigency finding, Green's judgment and sentence requires him to pay a VPA and supervision and community placement fees as determined by Department of Corrections.

---

[4] After the jury failed to reach a verdict with regard to Green's second degree attempted murder charge, the State moved to dismiss the charge without prejudice.

[5] Green's judgment and sentence lists "RCW 10.1010010(3)(a)-(c)" but this appears to be a scrivener's error. CP at 136.

Green appeals.

ANALYSIS

I. PRIOR INCONSISTENT STATEMENTS

Green argues that the "trial court erred in admitting prior inconsistent statements by [Green's] mother based on facts unsupported by the record," thereby "prejudicing [Green] and necessitating reversal of his convictions." Br. of Appellant at 9. Specifically, Green contends that the trial court's evidentiary ruling affected Baker's credibility and was harmful where: (1) there was inconsistent testimony concerning who pulled the trigger, (2) "Green was excluded as a contributor to DNA on the pistol magazine," and (3) the police did not investigate Causey nor compare his DNA to the unknown DNA on the pistol magazine. Br. of Appellant at 22.

The State argues[6] that the trial court did not abuse its discretion in allowing the State to impeach Baker and, even if it did, any error was harmless. The State contends that the error was harmless where the State "presented ample evidence for the jury to convict [Green] . . . and where the trial court instructed the jury that it was to consider the impeachment testimony for purposes of evaluating Baker's credibility only." Br. of Resp't at 16. We agree with the State that the trial court did not abuse its discretion.

Under ER 613(b), a party may introduce extrinsic evidence of a witness's prior inconsistent statement where the witness is provided the opportunity to explain or deny the statement and the opposite party is provided the opportunity to interrogate the witness

---

[6] Preliminarily, the State argues that Green failed to object to the State's request to impeach Baker's testimony and thus, failed to preserve the issue for appeal. We hold Green's objection to the admission of Baker's prior inconsistent statement was apparent from the context, timely, and specific. Accordingly, Green preserved the issue for appeal.

concerning the statement, "or the interests of justice otherwise require." Generally, when a "'witness testifies at trial about an *event* but claims to have no knowledge of a material detail, or no recollection of it, most courts permit a prior statement indicating knowledge of the detail to be used for impeachment.'" *State v. Newbern*, 95 Wn. App. 277, 292, 975 P.2d 1041 (1999) (quoting 5A KARL B. TEGLAND, WASHINGTON PRACTICE: EVIDENCE § 256, at 309 (3d ed. 1989)). Alternatively, if "'the witness claims a total lack of memory and gives no substantive testimony on the factual issue at hand, a prior statement by the witness is inadmissible regardless of whether the lapse of memory is genuine because . . . there is simply no testimony to impeach.'" *Id.* (quoting TEGLAND, § 256, at 310).

We determine whether statements are inconsistent using the following test: "'[I]nconsistency is to be determined, not by individual words or phrases alone, but the *whole impression or effect* of what has been said or done. On a comparison of the two utterances, are they in effect inconsistent? Do the two expressions appear to have been produced by inconsistent beliefs?'" *Id.* at 294 (alteration in original) (quoting *Sterling v. Radford*, 126 Wash. 372, 375, 218 P. 205 (1923)).

We review evidentiary rulings for an abuse of discretion. *State v. Stenson*, 132 Wn.2d 668, 701, 940 P.2d 1239 (1997); *State v. Ramirez-Estevez*, 164 Wn. App. 284, 289, 263 P.3d 1257 (2011) (published in part). A trial court abuses its discretion where "its decision is manifestly unreasonable or exercised on untenable grounds or for untenable reasons; an abuse of discretion also occurs when the trial court relies on unsupported facts, takes a view that no reasonable person would take, applies the wrong legal standard, or bases its rulings on an erroneous view of the law." *Ramirez*-Estevez, 164 Wn. App. at 289-90.

Here, Baker remembered the event of bringing Green to the police station. Baker did not claim a total lack of memory of the event. Instead, Baker claimed multiple times to not *remember telling* any officer that Green was involved in a shooting. But at one point, Baker denied that she *told* the police officer at the police station that she brought Green to the station because Green was involved in a shooting. These are two inconsistent statements. Based on the totality of the circumstances, the trial court did not abuse its discretion in allowing the State to introduce the impeachment statement because Baker did not remember the statement but remembered the event, and because Baker's statements were inconsistent. Because we find no abuse of discretion, we need not reach the argument of whether the trial court's error was harmless. Thus, we hold that the trial court did not abuse its discretion.

## II. DISCRETIONARY SUPERVISION FEES

Green argues, and the State concedes, that his "judgment and sentence erroneously includes discretionary supervision fees." Br. of Appellant at 23. We agree.

Under former RCW 9.94A.703(2)(d) (2018), a trial court could waive community custody supervision fees. Our legislature recently amended RCW 9.94A.703, removing the sentencing court's authority to impose community custody supervision fees. *See* RCW 9.94A.703; SECOND SUBSTITUTE H.B. 1818, 67th Leg., Reg. Sess. (Wash. 2022). Although this amendment was not effective until June 9, 2022, after Green filed his appeal, Division Three of this court recently held that the amendment applies to cases pending on appeal. *State v. Wemhoff*, 24 Wn. App. 2d 198, 202, 519 P.3d 297 (2022).

Here, Green's judgment and sentence erroneously provides for the imposition of discretionary supervision fees. During sentencing, the trial court explicitly found that Green was

10

indigent and stated its intent to "waive all non mandatory fines and costs." 7 RP at 741. Although Green's judgment and sentence includes a finding of indigency, his judgment and sentence still erroneously requires that he pay supervision and community placement fees as determined by Department of Corrections.

In light of the trial court's finding of indigency and the recent statutory amendment to RCW 9.94A.703, we hold that Green's judgment and sentence erroneously includes discretionary supervision fees.

### III. Victim Penalty Assessment

Green argues that in light of amended RCW 7.68.035, we should remand for the trial court to strike the VPA from his judgment and sentence. We agree that amended RCW 7.68.035 applies to Green's judgment and sentence.

Under former RCW 7.68.035(1)(a), the trial court was required to impose a penalty assessment on any individual found guilty of a crime. In 2023, our legislature amended RCW 7.68.035. Engrossed Substitute House Bill amended RCW 7.68.035 to prohibit trial courts from imposing a penalty assessment on indigent defendants as defined in RCW 10.01.160(3). LAWS OF 2023, ch. 449, § 1; RCW 7.68.035(4).

Amended RCW 7.68.035 took effect on July 1, 2023. LAWS OF 2023, ch. 449. Statutory amendments related to costs imposed upon conviction apply to cases pending on appeal. *See State v. Ramirez*, 191 Wn.2d 732, 748-49, 426 P.3d 714 (2018).

Here, because Green's case is on direct appeal, amended RCW 7.68.035 applies. Although the trial court found Green indigent "based on being represented by assigned counsel," the trial court did not expressly find Green indigent under RCW 10.01.160(3). CP at 136.

No. 56606-1-II

Accordingly, we remand for the trial court to determine Green's indigency under RCW 10.01.160(3) and to reconsider whether to impose the VPA in light of that determination.

CONCLUSION

We hold that the trial court did not abuse its discretion in admitting Baker's prior inconsistent statement, and that Green's judgment and sentence erroneously includes discretionary supervision fees. Furthermore, we hold that amended RCW 7.68.035(4) applies to Green's judgment and sentence. Accordingly, we affirm Green's conviction but remand solely for the trial court to strike the discretionary fees included in Green's judgment and sentence and to reconsider his indigency under RCW 10.01.160(3) and the imposition of the VPA.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Che, J.

We concur:

Cruser, A.C.J.

Veljacic, J.

12